Per Curiam.
—-The action was for damages for the death of plaintiff’s intestate, caused by the negligence of the defendants. The cause of the death was the falling of a tree that had been growing on a sidewalk. After the tree fell it was apparent that it was rotten from the roots up, to a dangerous degree. There was some conflict of evidence as to whether there was any exterior sign of the rottenness when the tree was standing.
On the trial, the defendants’ counsel asked the court to charge, which the court declined, that the plaintiff could not recover, unless she satisfied the jury that the rottenness was visible and obvious to view from ordinary observation; that if the tree presented no outward indication of rottenness or unsafeness, then there was no negligence in not boring the tree or not making any extraordinary examination to test its safety unless the city had reason to believe, from notice or otherwise, that it was rotten or unsafe ; that to demand of the city that it should bore the tree, or should make any other than a superficial examination to look for possible defects which could not be discovered, would, in the absence of notice of their existence, be imposing upon the city more than ordinary care ; that if the decay in the tree, which occasioned the accident, was concealed and hid from ordinary observation, and the city had no notice, actual or constructive, that such tree was *300 decayed or dangerous, the city is not guilty of negligence for not discovering such decay, and the accident is one of misfortune, or inevitable accident, for which there is no redress at law ; and that if the tree was to all outward appearance reasonably safe and sound for the ordinary season and storms, and if the city had no iptice of its unsound character, and no reason to apprehend that it was unsound, then the city is not liable.
It may be well to say that the rottenness or decay referred to in these requests means a rottenness or decay that would make the tree liable to fall or be blown down. There was an assumption in these requests which justified the court in declining to charge them. They assumed that the plaintiff must rely solely upon the duty of the city, as respects an actual condition of rottenness or unsafety. They imply that, as matter of law, the duty began only when the danger began, and that if the city had no reason to believe that the tree had actually become unsafe, it would not be liable. But it was incumbent upon the city to use ordinary caution to anticipate the danger that could come into existence without manifesting itself to ordinary observation. If the contingency of the facts were that a secret cause of danger might grow aiid increase, and yet be hidden, it could not be assumed that, as matter of law, the city was not bound to do anything except use ordinary means to ascertain when danger was imminent and imperiled the safety of passers-by. It would be a question for the jury as to whether the defendant should do or not do something, even to cutting down the tree, to prevent the danger. The jury could find whether it was the duty of the defendant to ascertain the habits of a tree of this kind, growing- in city soil, and to ascertain whether it was likely or unlikely that while the tree was fair on the outside, and apparently staunch, there was reasonable ground for apprehending that it might be, in fact, unsafe. On this point there is the testimony of an expert, a witness for the defendant, who, speaking of the kind of rot that was in this tree, said, “ When the rot first commences down in the tap-root, the *301 •decay goes on, and it is hardly possible to tell whether the tree is sound or not, because it does not appear at the top ; such a tree goes on increasing its diameter, and it rots away as fast in the center as it makes aggregate growth on the outside ; the rot may be in it a long time.” Another párt of his evidence went to show that such rotting was likely to begin from the kind of soil there is in the city. It would be incorrect to limit the obligation of the city to act only upon what was called in the case the appearance of the tree as being dangerous. The city would be bound to act upon their knowledge, or obligation to gain knowledge, as to the intrinsic qualities of the tree and the soil, although these were not manifested in the outward appearances of, the tree.
The charge of the court, as made, included all that was correct in the requests that have been examined.
On the trial, the plaintiff’s counsel was allowed to read to. the jury, in summing up, from a report of law cases, against the objection of defendant’s counsel, the following extract:—“ In that case it was held that the city was under an absolute duty to keep its streets in a sale condition for public travel, and was bound to exercise reasonable diligence and care to accomplish that end.” The counsel who read this, probably mistook the direction of the judge to proceed with his argument as a permission to read the extract. This is doubtful, however, as the words of the court are stated in the case to be, “ Counsel may proceed with his argument.” The permission, if it were given, was irregular. Such a proceeding may, in some cases, tend to withdraw the minds of the jury from the issue of fact before them, and from their duty to take the law from the court.. In this case, it is clear the defendant could not have been injured. None of the facts of the case cited by the counsel to the jury were given by him, and what he read could only have impressed the jury with what the court after-wards, in substance, charged, that it was the absolute duty of the defendant to use reasonable care in keeping the streets in a safe condition.
Other exceptions were taken. They are not of a kind *302 that calls for a detailed statement of them here. They have been examined, and cannot be sustained.
Judgment affirmed with costs, and order appealed from affirmed, with $10 costs.