CHARLES M. PRESTON, AS RECEIVER, ETC., OF JAMES D. McINTYRE, APPELLANT, v. THOMAS L. SOUTHWICK, GEORGE WELLS AND JAMES D. McINTYRE, RESPONDENTS.

*Filing of a chattel mortgage* — 1883, *chap.* 279 — *a subsequent agreement affecting it need not be filed* — *its validity is not affected by the fact that part of the agreement rests in parol.*

This action was brought by the plaintiff, who had been appointed January 15, 1884, a receiver of the property of the defendant McIntyre, in proceedings supplementary to execution, to recover the value of property of the said McIntyre, alleged to have been wrongfully and in fraud of the rights of his creditors taken by the defendants Southwick and Wells, under two bills of sale given to them respectively by McIntyre on December 29, 1883, and filed in the county clerk's office on December thirty-first (the thirtieth being Sunday). The referee found that the said bills were given by the said McIntyre at a time when he was insolvent, for money theretofore loaned to him by the defendant Southwick, and for notes indorsed for his accommodation by Wells; that, after the execution and delivery of the said bills of sale, the defendants Southwick and McIntyre signed a written agreement by which McIntyre agreed to pay over to Southwick all moneys realized upon articles sold and described in said bills of sale, to be by him applied in payment of the sums mentioned therein, and to act as the agent of Southwick and Wells in making such sales. The agreement then authorized McIntyre, " on the part of said Southwick and Wells," to sell the said articles as their agent, and not otherwise, and on condition that he pay over the proceeds as above. This agreement was not filed.

*Held,* that the fact that the second agreement was not filed did not render the bills of sale void as against the creditors of McIntyre as being a failure to comply with the provisions of section 1 of chapter 279 of 1883, providing that every mortgage or conveyance intended to operate as a mortgage which shall not be accompanied by an immediate delivery and be followed by an actual and continued change of possession, shall be absolutely void as against the creditors of the mortgagor, "unless the mortgage, or a true copy thereof, shall be filed." (LANDON, J., dissenting.)

APPEAL from a judgment for $256.94 costs, entered in Ulster county on the report of a referee dismissing the plaintiff's complaint.

The action was brought by the plaintiff as a receiver, appointed in proceedings supplementary to execution, to recover the value of certain property of the defendant James D. McIntyre, an insolvent, alleged to have been taken by the defendants Thomas L. Southwick and George Wells, wrongfully and in fraud of the rights of creditors, under two bills of sale, and a written agreement set forth in the com

plaint. The plaintiff was appointed receiver on the 15th day of January, 1884.

. The referee found that for a considerable time prior to December 29, 1883, James D. McIntyre was engaged in business in the city of Kingston, N. Y.; that the defendant Wells had for some three years prior to December 29, 1883, been an accommodation indorser for McIntyre, and on December 29, 1883, was an accommodation indorser of notes made by McIntyre to the amount of about $925, which notes had been discounted by the State of New York National Bank and were then held by said bank, said McIntyre having received the proceeds of said notes, which notes on said December twenty-ninth were not due. That said McIntyre had promised the defendant Southwick, in procuring loans from him, in substance, that if any business misfortunes should befall him, he would protect him and see that he was paid, and repeated the same statement to him when giving him a note for $885, and on such assurance payment of the amount for which said note was given was not pressed; that said McIntyre had from time to time continued to procure Wells to indorse his notes on the promise to him that he would certainly pay the notes and not allow him to lose by his indorsement; that on the 29th of December, 1883, McIntyre was insolvent and unable to pay his debts, and had been for a considerable time before Burdon & Stowe had commenced an action against James D. McIntyre for the collection of a debt due to them in the Supreme Court, prior to December 29, 1883, and on the 3d day of January, 1884, obtained judgment for $244.97, on which an execution was duly issued, returned unsatisfied, and thereafter, in proceedings supplementary to execution, the plaintiff was appointed receiver of said James D. McIntyre's estate by an order made January 15, 1884, and was, by an order of this court, authorized to bring this action; that the plaintiff has duly qualified as such receiver; that said McIntyre, on the 29th day of December, 1883, made, executed and delivered to the defendant, George Wells, a bill of sale of a part of said McIntyre's stock of trade in his said store, for the consideration of $925, named in said bill of sale; that the real consideration of said bill of sale was that said Wells was to pay notes upon which he was accommodation indorser, and which he did subsequently pay; that on said 29th day of December, 1883, said McIntyre made, executed and delivered to the defendant,

Thomas L. Southwick, a bill of sale of a part of his stock of goods in said store, on payment and satisfaction of $885 then owing by said McIntyre to said Southwick, the whole amount of which was then due, with interest thereon from August 3, 1883; that said McIntyre represented to said Southwick & Wells that the said bills of sale covered his entire stock of goods and accounts due him, and they were accepted in that belief; that the articles enumerated in said bill of sale in fact did not cover his entire stock of goods, and some of them were left out of the enumeration by said McIntyre by reason of his not taking an inventory. Most of the valuable stock in his store being stoves piled up in the cellar, the names of them were not correctly enumerated, and some were known as well by one name as another, but that said McIntyre did actually deliver over to said Southwick and Wells his entire stock of goods under said bills of sale; that said bills of sale were filed in the Ulster county clerk's office, in the city of Kingston, on the 31st day of December, 1883, said McIntyre, Southwick and Wells all residing in said city; that immediately after the execution and delivery of said bills of sale, the defendant Southwick, for himself and said Wells, and by his authority, took possession of the stock of goods in the store, and thereafter continued in the possession thereof until sold, and on the said 29th day of December, 1883, entered into the following agreement:

"It is hereby agreed by me, James D. McIntyre, that I will pay over to Thomas L. Southwick all moneys realized upon articles sold described in the bills of sale made by me to said Southwick and to George Wells, both dated Dec. 29, to be by said Southwick applied in payment of the sums mentioned in said bills of sale due said Southwick & Wells, and I agree to act as their agent in making said sales, and not otherwise. The entire proceeds of such sales to be applied to the reduction of said indebtedness. On the part of said Southwick & Wells, we authorize said McIntyre to sell the articles described in the two bills of sale as our agent only, and not otherwise, and on condition that he pay over the proceeds as above, and apply them to the indebtedness to us.

Dated *Dec.* 29, 1884.

JAMES D. McINTYRE.
THOMAS L. SOUTHWICK."

*G. R. Adams*, for the appellant.

*J. Newton Fiero*, for the respondents, Southwick & Wells.

LEARNED, P. J. :

The bills of sale from McIntyre to Southwick and to Wells were executed and delivered December 29, 1883. They were filed December 31, 1883, in the proper office. The intervening day, December thirtieth, was Sunday.

If there was an oral agreement that these bills of sale should be, in fact, mortgages, such oral agreement could not be filed. All that could be done under the statute (chapter 279, Laws of 1833, sec. 1) was to file the bills of sale. And that was done promptly. The statute speaks of a "conveyance intended to operate as a mortgage" and requires its filing. And of course nothing more can be done, where the agreement rests in parol, by which a bill of sale, absolute on its face, is in fact a mortgage. The character of the bills of sale, that is, whether they were absolute or intended as mortgages, must rest upon the agreement existing at the time when they were delivered. It was subsequent to such delivery and (according to the testimony of Southwick) subsequent to the filing of the bills of sale in the county clerk's office that Southwick executed to McIntyre the authority to sell the goods. This was not signed by Wells.

Now, if the oral agreement, on which the bills of sale were delivered, made them in fact mortgages, then this authority, signed by Southwick, was no part of the chattel mortgages, and it was not necessary to file it. If the bills of sale were chattel mortgages when they were executed, then they were properly filed, for the written authority signed by Southwick was not in existence when the bills of sale were delivered.

But that written authority was not material to the contract between Southwick and Wells on the one side and McIntyre on the other, in respect to the transfer of his property to them. It might be useful as evidence tending to show what the actual oral contract was; but it was not a part of the contract. It was only an authority from one of the two separate mortgagees (perhaps acting for both) to McIntyre to dispose of their property, and to pay the avails to Southwick, the mortgagee; such avails to be applied to the debts for which the bills of sale had previously been given as security. It did not

make chattel mortgages out of the bills of sale; but it only acknowledged the duty of the mortgagees which already rested upon them by the oral agreement. It refers to the sums mentioned in the bills of sale due said Southwick and Wells. And the bills of sale had expressed these amounts as the consideration. Suppose this paper had been executed to some third party (as it might have been), who was to sell these goods for Southwick and Wells? Would there have been any necessity for filing it?

The case of *Ely* v. *Carnley* (19 N. Y., 496), holds only that, where a copy of a chattel mortgage is filed, after the lapse of the first year (under sec. 3 of the Act), and the statement of the amount claimed was too much by $100, such filing was not good. But that does not hold that where a bill of sale, absolute on its face, is, by oral agreement, a chattel mortgage; such bill of sale cannot be filed. Yet such bill of sale does not show the amount of the lien.

I find no case which requires the filing of such an instrument as the power executed by Southwick to McIntyre; and I do not think that the bills of sale (assuming for the present that they were chattel mortgages) were void because this paper was not filed. That where a bill of sale is, by oral agreement, intended as a mortgage, it is a full compliance with the statute to file the bill of sale, seems to me evident. The statute says: "A conveyance intended to operate as a mortgage." Now, if the instrument is on its face a mortgage, then this language is inappropriate. The language must be intended for the case where the instrument is absolute on its face, but "intended to operate as a mortgage" by oral agreement. It seems to me that the mortgages (assuming them to be such) were properly filed under the statute.

I think the judgment should be affirmed, with costs.

BOCKES, J., concurred.

LANDON, J. (dissenting):

The testimony of all the parties to the bills of sale establishes, beyond any reasonable question, that one was given to secure to Southwick the payment of McIntyre's debt to him, and the other to secure Wells against loss upon his liability as indorser for McIntyre. This testimony is cited in the brief of the counsel

for the appellant. The inspection of the case verifies the citations and fails to disclose any evidence in contradiction.

The bills of sale were delivered upon the oral understanding that they were such security, and that McIntyre, the debtor, was to continue in possession and dispose of the goods from his store in like manner as before the sale, except, however, as agent for Southwick and Wells. All that Southwick and Wells wanted was protection from loss, and the inference is justified that if the proceeds coming to them from the sale of the goods exceeded that amount the surplus was to be accounted for to McIntyre. Southwick, acting for himself and for Wells, went, directly after the interview with McIntyre, in which McIntyre delivered the bills of sale, to the office of counsel. He returned to McIntyre, within an hour after the bills of sale had been delivered, and before they were filed, and presented McIntyre with a paper which he and McIntyre both signed, and which Southwick never filed, but kept for the benefit of himself and Wells. That paper was as follows:

" It is hereby agreed by me, James D. McIntyre, that I will pay over to Thomas L. Southwick all moneys realized upon articles sold, described in the bills of sale made by me to said Southwick and to George Wells, both dated Dec. 29, to be by said Southwick applied in payment of the sums mentioned in said bills of sale due said Southwick & Wells, and I agree to act as their agent in making said sales, and not otherwise. The entire proceeds of such sales to be applied to the reduction of said indebtedness. On the part of said Southwick & Wells we authorize said McIntyre to sell the articles described in the two bills of sale as our agent only, and not otherwise, and on condition that he pay over the proceeds as above and apply them to the indebtedness to us.

" Dated *Dec.* 29, 1884.

"JAMES D. McINTYRE
"THOMAS L. SOUTHWICK."

The inference, justly deducible from this transaction and the paper, is that the oral agreement, contemporaneous with the bill of sale, was, in part at least, reduced to writing, and, hence, to that extent supercedes the oral arrangement and forms part of the same transaction as the bills of sale. The two should be construed together. (*Haydock* v. *Coope*, 53 N. Y., 69.) This paper con-

clusively shows that the entire transaction was in the nature of a security. The proceeds of all sales are thereby agreed to be "applied in payment of the sums mentioned in said bills of sale due said Southwick and Wells."

Nothing could be due them if the goods had been sold to them in satisfaction or in payment of their claims. Nothing more could be applied in payment upon claims already paid. "The entire proceeds to be applied to the reduction of said indebtednss." This could not be done unless the indebtedness continued, nor could any more be applied in reduction of the indebtedness than sufficient to cancel it; and because no more of the proceeds of the sales is appropriated to the benefit of Southwick and Wells than sufficient to cancel the indebtedness, the surplus did not belong to them, and McIntyre continued the owner thereof, or of an equity of redemption therein, and Southwick & Wells' control over the property would cease with the satisfaction of their claims. (*Charter* v. *Stevens*, 3 Den., 33; *Cameron* v. *Irwin*, 5 Hill, 272.) Both papers together, therefore, constituted a mortgage. (*Bragelman* v. *Dune*, 69 N. Y., 74; *Coe* v. *Cassidy*, 72 id., 137; *Leitch* v. *Hollister*, 4 id., 216; *Knapp* v. *McGowan*, 96 id., 86; *Smith* v. *Beattie*, 31 id., 542.)

This is a contest between creditors. Southwick and Wells claim as vendees under their bills of sale. If, however, they are mortgagees, and not absolute vendees, they have no title to the goods against the creditors represented by the plaintiff, unless they have taken the statutory steps necessary to validate a mortgage lien against the claims of judgment creditors. The statute (chap. 279, Laws 1833, § 1) declares that "every mortgage or conveyance intended to operate as a mortgage of goods and chattels hereafter made, which shall not be accompanied by an immediate delivery, and be followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor  *  *  *  unless the mortgage, or a true copy thereof, shall be filed," etc. Southwick and Wells, at best, only took constructive possession, and left McIntyre in actual possession under the agreement that he should only act as their agent. Such constructive possession is of no force. Actual open and public possession of the mortgagee, to the exclusion of the appearance of control on the part of the mortgagor, is required. (*Hale* v. *Sweet*,

40 N. Y., 101; *Steele* v. *Benham*, 84 id., 634; *Crandall* v. *Brown*, 18 Hun, 461.) Immediate possession is the imperative requirement of the statute; hence possession taken two months later, and when the receiver's title had vested, is of no force. (*Dutcher* v. *Swartwood*, 15 Hun, 31.)

Both papers constituted the mortgage and only one was filed, hence the statute was not, in this respect, complied with. The statute says "the mortgage" shall be filed, and that means the papers making it, however many of them. (*Ely* v. *Carnley*, 19 N. Y., 496.) If the defendants rest upon the bill of sale and the oral contemporaneous agreement, it is difficult to see how the statute could be complied with, for in that case one part of the mortgage is written and the other not. The bills of sale omitted a material part of the goods in McIntyre's store, but they were ultimately disposed of by the defendants in the same manner as if they had been included. The referee erroneously, as we think, allowed McIntyre to testify that he intended to include everything, but by inadvertence failed to do so. If we are right in our view that the relation created between McIntyre and Southwick and Wells was that of mortgagor and mortgagees, then this intention of McIntyre to put in the things he left out in no way cures the omission. Clearly, as to the goods omitted from the instrument, Southwick and Wells have no shadow of title against the judgment creditors of Southwick, however much they might have against McIntyre. They have not complied with the statute and, therefore, are not within its protection. Why they omitted any step is an idle inquiry. The referee decided this case upon the theory that the bills of sale gave to Southwick and Wells a title to the property, good against judgment creditors. The appellant urges upon us that if the instruments were bills of sale only, they are fraudulent and void against creditors, because given and received to enable McIntyre to appropriate a portion of the property to his own support and to hinder and defeat other creditors.

We have not thought it necessary to examine the case in that aspect. We think the transaction created the relation of mortgagee and mortgagor, and that the mortgage was void against creditors, not because of fraud but because the statute was not complied with.

Judgment affirmed, with costs.