19 So.2d 529

**CITY OF MONTGOMERY v. QUINN.**

3 Div. 416.

Supreme Court of Alabama.

Oct. 19, 1944.

Rehearing Denied Nov. 16, 1944.

Walter J. Knabe, of Montgomery, for appellant.

Hill, Hill, Whiting & Rives, of Montgomery, for appellee.

THOMAS, Justice.

Suit by a father for the death of his minor child caused by the falling of a

rotten limb from a tree growing between the sidewalk and the curb stone.

The complaint, in two counts, was directed to the City of Montgomery and the owner of the adjacent property where the tree grew. Count one alleged that the city negligently caused or allowed a rotten limb hanging over the sidewalk to remain on the tree, and the limb fell, causing the injury of which complaint is made. Count two alleged that the rotten limb was a defect in the street, which the city failed to remedy after it had been called to its attention, or after that defect had existed for such an unreasonable time as to raise the presumption of knowledge of such defect on the part of the Board of Commissioners of said city.

Demurrer directed to each count was overruled by the trial court. Code 1940, Tit. 37, §§ 502, 503.

■ The question raised was that if there was the right of recovery on the facts averred, it should not be had against the city, unless a sworn statement had been filed by the party injured or his personal representative in case of death, stating substantially the manner in which the injury was received, the place where the accident occurred, and the damages claimed.

In Taylor v. City of Clanton, 245 Ala. 671, 18 So.2d 369, the right of such action by a parent for an injury to a minor child was considered. It was held that Code 1940, Tit. 37, § 504, may not be so construed as to deprive a parent of the claim or right under Code 1940, Tit. 7, § 119, because the party injured failed to file the claim therefor or his personal representative did not so file the claim. Here the parent filed the claim.

■ Questions presented on the trial are whether or not evidence may be introduced: (1) As to the condition of the tree and the action of the city in removing other dead limbs therefrom immediately after the accident; (2) As to the argument of counsel to the jury relative to such evidence, and whether or not it may be considered by the jury touching negligence. If such evidence is considered an act or admission of negligence, it is incompetent. If it is considered merely as evidence of the condition existing at the time of the injury, it is competent, if properly limited.

In II Wigmore on Evidence, Third Edition, pp. 151–159, the subject was considered under the title, "Taking Measures to Remedy Injury; Repairs of a Machine, Highway, or the like, after an Injury." The author says:

"That argument is that the admission of such acts, even though theoretically not plainly improper, would be liable to over-emphasis by the jury, and that it would discourage all owners, even those who had genuinely been careful from improving the place or thing that had caused the injury, because they would fear the evidential use of such acts to their disadvantage; and thus not only would careful owners refrain from improvements, but even careless ones, who might have deserved to have the evidence adduced against them, would by refraining from improvements subject innocent persons to the risk of the recurrence of the injury.

"Whatever then might be the strength of the objection to such evidence from the point of view of Relevancy alone, the added considerations of Policy suffice to make clear the impropriety of resorting to it. On one or another or both of these grounds have most Courts rested their reasoning."

Many authorities are collected, including those from this jurisdiction, as follows: Louisville & N. R. Co. v. Malone, 109 Ala. 509, 518, 20 So. 33 (mere fact of repairs held inadmissible; but in determining the condition at the time of the injury or accident, the repairs may be considered and must be so limited); Jackson Lbr. Co. v. Cunningham, 141 Ala. 206, 37 So. 445 (defective roadbed; changes of track-timbers, etc., admitted, to identify other timbers in the track at time of accident); Frierson v. Frazier, 142 Ala. 232, 37 So. 825 (ferry accident, subsequent placing of a rear guard admitted only on cross-examination of a defendant who had testified to that subject as it affected liability); Davis v. Kornman, 141 Ala. 479, 37 So. 789 (injury by a machine; protective construction since the injury excluded); Central of Georgia R. Co. v. Grover, 218 Ala. 290, 118 So. 506 (repairs of a track at or about a quarter of a mile from place in question excluded as too remote or immaterial).

On the effect of such evidence, Mr. Wigmore continues:

"Since the condition of a place or thing at the time of an injury may always be evidence by showing its condition before or after that time, provided no substantial

change has occurred, * * * the description of the *condition of the place subsequent to the injury* may necessarily involve a mention of the fact of repairs; but *this use of the fact should be guarded against misuse for the forbidden purpose."* [Italics supplied.]

The latest announcement in this jurisdiction is Norwood Clinic, Inc., v. Spann, 240 Ala. 427, 199 So. 840, 843, where it is observed:

"With respect to the fact that after the accident, grooves were cut out across the walkway; and the assignments of error in that connection. No one here questions the principle that plaintiff cannot show initially that after the accident defendant did some act which was intended to make the location safer for such use. * * *

"But this is so only when such evidence is offered and intended to show thereby that the place was not reasonably safe before the alteration was made. *It would be unjust to assume that because defendant used extreme care after the accident, that he should have done so before.* * * *." [Italics supplied.]

The decision in Green v. Atlantic Coast Line R. Co., 136 S.C. 337, 134 S.E. 385, 386, contains an interesting discussion touching the duty of the trial judge as to the admission and the limitation of the effect of such evidence. It is there indicated:

" 'Here the only question can be what are the proper means for avoiding the risk of misusing the evidence. It is uniformly conceded that the instruction of the court suffices for that purpose; and the better opinion is that the opponent of the evidence must ask for that instruction; otherwise he may be supposed to have waived it as unnecessary for his protection.' [Wig.Ev. (1st. Ed.) 42] * * *

"The plaintiff's case depended upon his establishing the fact that the limb extended over the caboose at the appropriate height to strike him. At the time of the trial the limb was not there; and, as the Chief Justice remarks in the case of Plunkett v. Clearwater Bleachery & Mfg. Co., 80 S.C. 310, 61 S.E. 431, if the plaintiff be not allowed to prove the subsequent change in the situation, 'the case would be determined upon subsequent facts, and not upon those existing at the time of the injury.' Unquestionably if some one not connected with the railroad company had sawed the limb off, we apprehend that there would be no objection to the evidence. The fact that because the agent of the railroad had done it could not affect the admissibility of the evidence; it only imposed upon the trial judge the duty of giving to the jury the proper limiting instructions."

Under the foregoing rule, no error was committed in the introduction of evidence, over defendant's objection, as to the immediate and subsequent removal of other rotten limbs from the instant tree by the city testified to by witnesses Hines, Barnes, Barton and Quinn. The evidence merely tended to show the condition of the tree and its limbs on Monday after the accident occurred on Friday afternoon. The trial judge did his duty in the premises in his general charge to the jury. He said:

"The Court has permitted some evidence to come before you tending to show that a short time after this accident and injury to the minor, the City authorities sent out there and trimmed up that tree, removing certain limbs that were claimed to have been decayed or rotten. The Court has permitted that testimony to come before you solely for one purpose, and that purpose is to show the condition of that tree at the time this alleged accident and injury took place, and it is not to be regarded by the jury as any admission on the part of the City that it was negligent in the way they handled this street, or in the way they looked after this sidewalk, because after the thing was all over they went out there and trimmed up that tree.

"A very able writer has this to say in regard to that rule: It has often been urged by counsel for the plaintiff that after an injury has occurred, the making of repairs of the taking of other precautions, or the discharge of the employee concerned, is to be taken as an admission by the party so doing it that there was some negligence or other culpable conduct on his part. The answers to these suggestions are two: First, that such conduct of the party—the city in this case—is equally open to the interpretation that the party, though he does not believe the place or thing culpably defective or dangerous, still wishes, in the light of what has occurred, to make it safe even beyond what the law requires of him; * * * and, secondly, to admit such evidence would be

to discourage all endeavor to improve existing conditions, or it would put a penalty upon a conscientious person. * * *

"So this evidence the Court has permitted to come before you, that the City crew went out there a short while after the death of the child and trimmed up the tree there; *is permitted solely* to show what was the *condition of this tree several days before the child was hurt;* and it is not to be taken that a few days after the child was hurt and the City went out and trimmed up this tree, *it admitted an act of negligence.*" [Italics supplied.]

The question recurs, was reversible error committed in the argument of counsel in reference thereto, objections reserved, and in the action of the court in sustaining objections without admonishing the jury as to their duty in considering this evidence?

The record recites what respective counsel for the plaintiff, arguing to the jury as to such evidence, said. First counsel said:

" * * * 'What clearer proof could you have of negligence than that they removed limbs from the tree immediately after the accident. I say this on the basis of the condition of the tree as they found it when they trimmed it on Monday following the date of the death of the little boy' * * *."

[To this remark objection was made, overruled, and exception allowed defendant.]

The latter statement by the other counsel to the jury was:

"* * * 'That negligence is shown by the condition of the tree when it was trimmed on Monday following the child's death.' * * *."

To this remark objection was overruled and exception allowed.

In its immediate context, the latter statement to the jury was within the rule that obtains, and in accord with the oral charge of the court to the jury. The first counsel's use of the words: "What clearer proof could you have of negligence than that they removed limbs from the tree immediately after the accident," was without the rule, and contrary to the general charge of the court. But the subsequent conclusion of that counsel to the effect: "I say this on the basis of the condition of the tree as they found it when they trimmed it on

Monday following the date of the death of the little boy," cured the injury he had theretofore injected in his argument to the jury.

The test of vitiating influence on the jury is that it might have unlawfully influenced the jury. Blue v. State, Ala. Sup., 19 So.2d 11.[1] In Roan v. State, 225 Ala. 428, 435, 143 So. 454, 460, this court held:

"* * * The test of vitiating influence is not that it did influence a member of the jury to act without the evidence, but that it might have unlawfully influenced that juror and others with whom he deliberated, and might have unlawfully influenced its verdict rendered. * * *"

No reversible error intervened in overruling the objection of defendant's counsel to the argument of one of plaintiff's counsel.

The insistence of the city is that the planting and caring for trees along the streets and sidewalks of its highways is a governmental function, and, therefore, the general affirmative charge should have been given on the due request by defendant.

Municipal liability in the management and control of highways is indicated by the line of general authorities. In 13 R.C.L. p. 310, § 258, it is stated:

"* * * But, subject to certain qualifications involving means and notice, the general rule in this country is that municipalities which have full and complete control over the streets and highways within their corporate limits are liable in damages for injuries sustained in consequence of their failure to use reasonable care to keep them in a reasonably safe condition for public travel. This is frequently held to be true even in the absence of a statute expressly imposing such liability. Where there is no such statute, liability is generally said to arise by necessary implication from the power and duty resting on the municipality to repair its streets and to keep them in repair and safe and fit for public use. More specifically, it is held that power to levy and collect taxes for the purpose of establishing and maintaining streets carries with it a co-ordinate liability for injuries resulting from failure to keep the streets in proper condition."

The early Alabama decisions cited in support of this conclusion are Campbell v. Montgomery, 53 Ala. 527, 25 Am.Rep. 656,

[1] Ante, p. 73

by Chief Justice Brickell; and Albrittin v. Mayor and Aldermen of Huntsville, 60 Ala. 486, 31 Am.Rep. 46, by Mr. Justice Manning. The latter decision is rested on City of Chicago v. Robbins, 2 Black 418, 422, 17 L.Ed. 298, holding that having the exclusive care of streets, the city is obligated to see that they are kept safe for proper passage of persons and property and is liable for damages sustained.

The subject is carefully considered in 13 R.C.L. p. 379, §§ 309–312, under headings: "What Portion of Way Must Be Kept Safe for Travel"; "Defects and Obstructions Outside of Traveled Portions" and "Nature and Kind of Defects or Obstructions as Determining Liability". Section 313, p. 384, of said volume is as follows:

"It is quite impracticable to prescribe any general rule applicable to all cases which will limit and precisely define the extent of the liability of municipal and quasi municipal corporations for accidents arising from defects and causing damage to persons and property, which may happen on highways and bridges which they are bound to keep in repair. Each case must be decided mainly on the facts and circumstances which are shown to exist at the time of the particular occurrence which is the subject of investigation. But an approximation to a fixed rule or standard may be attained by determining with certainty the particular kinds or classes of objects or encumbrances within the limits of a way, and the condition of its surface arising from certain extraneous causes, which cannot properly be held to constitute defects or a want of repair for which a city or town can be held liable. * * *."

Our case of City of Birmingham v. Carle, 191 Ala. 539, 68 So. 22, L.R.A.1915F, 797, is among the many authorities cited. That decision is rested upon City of Bessemer v. Whaley, 187 Ala. 525, 65 So. 542. The rule announced in the Carle case, supra, has been followed. A later observation of this court on the subject is found in Birmingham. Water Works Co. et al. v. Walker, 243 Ala. 149, 153, 8 So.2d 827, where the Carle case is cited on the subject of notice, and whether or not there was negligence in failing to remedy a defect is usually a jury question, that the city was due to exercise reasonable care to look for dangerous places situated where people have the right to travel, although caused by another. Code 1940, Tit. 37, § 502; City of Tuscaloosa v. Fair, 232 Ala. 129, 167 So. 276. It is said it was for the jury to determine whether under the circumstances the city was charged with notice of its existence and was negligent in failing to remedy the defective condition. The law in this connection is well understood. To the like general effect are Smith v. City of Birmingham, 243 Ala. 124, 9 So.2d 299, and Pollan v. City of Dothan, 243 Ala. 99, 8 So.2d 813, holding that one using the streets may assume they are reasonably safe, citing Carle case, supra.

In City of Bessemer v. Chambers, 242 Ala. 666, 8 So.2d 163, 165, it is said:

"But the legislature of this State has provided a limitation of the liability of a municipal corporation. Title 37, section 502, Code of 1940. Under its provisions this court observed in City of Birmingham v. Carle, 191 Ala. 539, 541, 68 So. 22, 23, L.R.A.1915F, 797, that: 'The liability of municipalities for damages for injuries done or suffered is limited to two distinct classes of negligent misconduct or omission, viz: (a) Where the wrong done or suffered was the proximate result of culpable act or omission of some agent, officer, or employé then engaged, within the line of his duty, in the municipality's service; (b) where the wrong done or suffered was the proximate result of culpable· municipal omission "to remedy some defect in the streets, alleys, public ways, or buildings, after the same (i. e., defect as defined) has been called to the attention of the council, or after the same (i. e., defect as defined) had existed for such unreasonable length of time as to raise a presumption of knowledge of such defect on the part of the council."' Except as specified in (b), supra, a city is not liable for damages for injury done to another except through the 'neglect, carelessness or unskillfulness of some agent, officer or employé of the municipality engaged in work therefor,' unless otherwise provided by law or the Constitution. * * *"

Other enlightening cases are City of Birmingham v. Levens, 241 Ala. 47, 200 So. 888 (broken piece of iron protruding above the sidewalk causing a fall and injury); City of Birmingham v. Smith, 241 Ala. 32, 200 So. 880 (rock barriers and lantern to show street repair or construction); City of Birmingham v. Wood, 240 Ala. 138, 197 So. 885 (defect in sidewalk caused by a root of a tree growing thereunder and causing the alleged elevation of sidewalk that caused injury to pedestrian).

In Brooks v. City of Birmingham, 239 Ala. 172, 194 So. 525, a case involving the

excavation in a street, it was declared that the duty of the city to use due care to keep streets reasonably safe for ordinary travel is not controlled by the manner in which the defect arose or by whom created, citing City of Bessemer v. Barnett, 212 Ala. 202, 102 So. 23, where the tractor with fender attached, working on street, struck an overhanging awning, which fell and injured plaintiff.

In McSheridan v. City of Talladega, 243 Ala. 163, 8 So.2d 831, 833, it was observed of the statute [Code 1940, Tit. 37, § 502]:

"Whether the act is a corporate act or the exercise of governmental power 'The underlying test is whether the act performed is for the common good of all, or whether it is for the special benefit or profit of the corporate entity.' 38 Am.Juris. 267, § 574;  *  *  *."

The distinction thus made between corporate functions and governmental acts was applied in Green v. City of Birmingham et al., 241 Ala. 684, 4 So.2d 394, where police officers were merely inspecting the street for repairs, and not engaged in making such repairs. It was held that the city was engaged in a governmental and not a municipal function, and the city was not liable for injury caused by their automobile, citing Hillman v. Anniston, 214 Ala. 522, 523, 108 So. 539, 46 A.L.R. 89; Id., 216 Ala. 661, 114 So. 55; City of Anniston v. Hillman, 220 Ala. 505, 126 So. 169.

And in Dorminey v. City of Montgomery, 232 Ala. 47, 166 So. 689, it was held that the traffic signals were operated as a governmental function, directing traffic, and no liability as affecting the municipality attached by its defective traffic lights causing collision, citing the case of Alabama Lumber & Building Material Ass'n et al. v. Mason, 230 Ala. 168, 160 So. 232.

In City of Birmingham v. Brock, 242 Ala. 382, 6 So.2d 499, by the Chief Justice, it was held that the guarding of convicts or prisoners was a governmental function, and in determining the city's liability for injuries inflicted by its agents, the test is whether the service in which the officer is engaged is a governmental function, not his title or relation to the governing body.

The foregoing decisions by this court are the guide for determining the fact of liability of a city for injuries caused in its acts while engaging in its ministerial functions and non-liability for injuries caused in the exercise of its governmental functions.

Did the complaint and the evidence make a jury question? The subject of overhanging and falling trees and limbs over and upon the street causing damage to travelers thereon is discussed in 43 C.J. p. 1030, § 1809, and many decisions from other jurisdictions are cited, holding liability as to an actionable defect in maintenance of such public highway.

The subject of torts and the application of the rule of municipal liability is considered in 38 Am.Jur. p. 267, §§ 574, 575 and 576. Section 576 reads as follows:

"*  *  * A municipality may function as a government agency *in matters left optional to it as well as in those imposed by law,* and it has frequently been stated that the mere fact that a municipality voluntarily assumes the performance of an act or function which is governmental in its nature does not render it liable for injuries resulting from its acts or omissions in connection with the matter or subject. [Long v. Birmingham, 161 Ala. 427, 49 So. 881, 18 Ann.Cas. 507]". Brackets and italics supplied.

The evidence shows that the city recognized, under the statute, assumed control and sought to discharge the duty of making safe the adjacent and overhanging trees along its sidewalks and ways.

The city ordinance is as follows:

"Number 458 of the City Code of 1938: It shall be unlawful for any person, firm, or corporation to tear up or disturb for any purpose the surface of any sidewalk, street, alley or other public place, or cut, trim or deface any tree upon any street, alley or other public place, without first obtaining a permit to do so from the City Engineer. All such work shall be done under the direct supervision and control of the said City Engineer."

We are of opinion that under the evidence a jury question was presented as to whether the city had notice of the alleged defect, and failed to do its duty of ordinary care and diligence, touching the same. A.L.R.Blue Book 427; 49 A.L.R. 840; 19 A.L.R. 1021.

The right and assumption of due care by a municipality as to its streets and sidewalks is shown in City of Birmingham v. Wood, 240 Ala. 138, 197 So. 885, 887. It is said:

"* * * So far as the city is concerned, the law has placed such duty upon it. Bessemer v. Whaley, supra [187 Ala. 525, 65 So. 542, 543]; Brooks v. Birmingham [239] Ala. [172], 194 So. 525. The allegation of negligence in that respect imports that the defect had existed sufficiently long to have been discovered and remedied by defendant by the exercise of due care. Lord v. City of Mobile, 113 Ala. 360, 21 So. 366; 15 Alabama Digest, Municipal Corporations, ☞816(4), p. 214. * * *

"A tree was between the south side of this block and the curb situated in a grass plot which was six feet wide between the curb and sidewalk, and the tree was about in the center of it. A root of that tree had grown under the block in the sidewalk and caused its elevation as described. * * *

"It was said in Texas Co. v. Williams, 228 Ala. 30, 152 So. 47, that as a general rule no duty rests upon the owner or occupant abutting a sidewalk to keep the same in repair and he is not liable for defects which he did not create. 43 C.J. 1103, § 1866, 1104, § 1867; 29 C.J. 679; 25 Amer. Jur. 657 § 364."

As stated in the excerpt above, the alleged defect there considered was caused by an undergrowing root causing the sidewalk to be unsafe for pedestrians. Here the alleged defect was an overhanging rotten limb that fell and caused the death of plaintiff's infant, a pedestrian on the sidewalk.

Many cases are collected in 19 A. L.R.1021 on the subject of liability for injuries due to dangerous condition of trees and overhanging limbs, menacing highways. In 72 A.L.R. 616, the subject of liability for damages to persons or property by the fall of trees along the municipal highways is considered. It is said:

"The rule is generally recognized that a city is liable for injuries received as a result of the fall of a tree located either in the vehicular or sidewalk area of one of its streets, if it knew of the dangerous condition of the tree (Chase v. Lowell, 1890, 151 Mass. 422, 24 N.E. 212; Huestis v. Toronto, 1926, 58 Ont.L.Rep. 648, 1926, 3 D.L.R. 142), or would have discovered such condition by the exercise of reasonable diligence [City of] Indianapolis v. Slider, 1914, 56 Ind.App. 230, 105 N.E. 56; [City of] Henderson v. Schlamp, 1893, 14 Ky.Law Rep. 575; Chase v. Lowell, 1890, 151 Mass. 422,

24 N.E. 212; Vosper v. New York, 1883, 17 Jones & S. 296 [49 N.Y.Super.Ct. 296]; Gubasko v. New York, 1888, 14 Daly 559, 1 N.Y.S. 215; Waldron v. Utica, 1930, 228 App.Div. 37, 238 N.Y.S. 401."

In Lundy v. City of Sedalia, 162 Mo. App. 218, 144 S.W. 889, 890, 891, it is held:

"It is the law that 'cities must exercise reasonable care to keep their streets reasonably safe from falling substances as well as from defects in the roadbed.' Loth v. City of Columbia Theatre Co., 197 Mo. [328] 349, 94 S.W. [847] 852; Franke v. City of St. Louis, 110 Mo. 516, 19 S.W. 938. There is no doubt about the duty of cities in such cases. But appellant contends that it was not shown that defendant was guilty of such negligence as would render the city liable for the injury plaintiff sustained. The fact that the limb was rotten and fell on a calm, clear day is indisputable evidence that it had been in the process of decay for a long time, and for such a length of time had it been an ordinary obstruction of the street it would have been discovered by persons passing, and by city officials. In some instances obstructions in streets have existed for such a length of time that the courts have held, as a matter of law, that notice would be presumed.

"* * * To prevent danger from such sources it is the duty of the officer of the city intrusted with supervision of the streets to look after such matters. And if it appears that he has been remiss in the performance of that duty, the city will be liable for any injury that may result to a passerby in consequence of his want of reasonable care."

Adverting again to text books, it will be noted that White on Negligence of Municipal Corporations, p. 493, § 390, observes:

"It seems to be a sound view that the power of a municipal corporation over its highways, and the right of the public in the use of them, extends upward indefinitely for the purpose of their preservation, safety, and enjoyment. This power carries with it a corresponding obligation which is expressed by a rule which requires the exercise of reasonable care by cities to keep their streets reasonably safe from falling substances as well as from defects in the roadbed. It is not demanded of a city that it should remove every overhanging object from its streets, but only those from which danger to the public may reasonably be apprehended."

The same idea is expressed in 7 McQuillin, Municipal Corporations, 2nd Ed. p. 142, § 2964, to the effect that:

"On the ground, therefore, of failure to exercise ordinary care to keep public ways in a reasonably safe condition for travel, municipal negligence may be established, on the theory of a defect in the street, in action for damages, due to injuries to travelers from awnings, signs, billboards, poles whether owned by the municipality or a public service company, wires, especially where charged with electricity, or other objects suspended over, or near thereto, or falling into a street or sidewalk."

■ McQuillin, Municipal Corporations, Second Edition, Revised Vol. 4, p. 125, § 1431, observes that a municipality retains control over the trees in its streets and may act as to them under its police power. This observation is sustained by our case of City of Mobile v. McClure, 221 Ala. 51, 127 So. 832.

Appellant's insistence is that the municipality, in the instant case, acted as to the trees overhanging the street in its governmental capacity and was therefore not liable for torts. That where there was liability under the statute, Code 1940, Tit. 37, § 502, the city's liability extended only to a defect in the surface of the street or sidewalk.

That section of the code has been recently considered in City of Birmingham v. Wood, 240 Ala. 138, 197 So. 885, and it was held that anything that may reasonably be expected to interfere with the safe use of the sidewalk by pedestrians was a defect. See also City of Bessemer v. Whaley, 187 Ala. 525, 65 So. 542; Brooks v. City of Birmingham, 239 Ala. 172, 194 So. 525.

A jury question was presented in the Whaley case, supra [187 Ala. 525, 65 So. 543], where the court said:

" * * * The basis of responsibility is negligence in suffering a defect to remain after it should in reason have been repaired, and notice to the corporation of the defect, or of facts from which notice may reasonably be inferred, or proof of circumstances from which it appears that the defect ought to have been known and remedied, is essential to liability. [Town of] Cullman v. McMinn, supra [109 Ala. 614, 19 So. 981]; [City Council of] Montgomery v. Wright, 72 Ala. 411, 47 Am.Rep. 422."

As to notice of the defect, the attorney for appellant insists that the city is not liable, because it had no notice of the rotten limb, and relies on Warren v. Tupelo, 187 Miss. 816, 194 So. 293, 294. In that case the limb had been broken by a wind storm the month previous to the injury. "The limb was good seasoned timber, was not rotten, had not been dead long." Hence it was held that there was no notice. However the Mississippi Court recognized that in a proper case the city would be liable for injuries caused by the falling of limbs, and said:

"The duty of a municipality to exercise reasonable care to ward against defects from overhead as well as underfoot exists. The danger may be as great from overhead as from underfoot, and it would be charged with that degree of care commensurate with the danger and risk as to trees which are permitted in the neutral ground between the sidewalk and the street, and in a proper case it would be liable for damages ensuing to a pedestrian struck by a limb which had been negligently allowed to remain in a tree for such length of time as to evince want of ordinary care relative thereto. See 43 C.J. 1030, Sec. 1809, and especially Note 11."

Adverting to the insistence of appellant's counsel that the care of trees along the streets or highways of a municipality is a governmental function and that the city is not liable for tortious conduct in the performance of such governmental function, we find no gray horse case in this jurisdiction. However, the evidence before us is without the influence or analogy of Williams v. City of Birmingham, 219 Ala. 19, 121 So. 14, where the action was against the city and members of the recreation board for the negligent shooting of plaintiff's intestate by the caddy master of the public golf course of the city alleged to be a servant of defendant in the operation of the golf links and public city park. It was held that the city was not liable because it was exercising a governmental function where plaintiff was injured.

The case of Dorminey v. City of Montgomery, 232 Ala. 47, 166 So. 689, 691, related to traffic signal, likewise serving the purpose to regulate the use of the streets, and installed by the city. The court held that in such installation and maintenance the city was exercising a governmental function under its police power, and not answerable in damages to a plaintiff in permitting such traffic light to be or to remain out of repair, that there was "no

physical defect in or obstruction of the street."

In Densmore v. City of Birmingham, 223 Ala. 210, 135 So. 320, it was held that the corporation was liable for negligent performance of corporate or ministerial duties but not liable for injuries caused by the wrongful or negligent performance of its governmental functions. The "peculiar condition in street at one place did not convert operations of city street sweeper colliding with automobile at that particular point into act of street maintenance when remainder of its operations were in performance of governmental functions." That a street sweeper moving along the thoroughfare was not an obstruction because of insufficient street lights and failure to display signals. The "creation of nuisance in street held not effected by movements of street sweeper colliding with automobile, though negligently operated." The foregoing and last two cases are decided on the exercise of the police power of the municipality and its governmental function.

We are of opinion that under the pleading and evidence before us the City of Montgomery was not engaged in a governmental function, relieving it from liability for the tort; and that the question of notice, under our statutes and decisions, was properly submitted to the jury.

It follows from the foregoing that no reversible error intervened at the trial and that the judgment of the trial court is due to be affirmed.

Affirmed.

All the Justices concur.

