George W. RUSSELL, Plaintiff-Appellant,

v.

**PAGE AIRCRAFT MAINTENANCE, INC., a corporation, Defendant-Appellee.**

No. 71-2551
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Feb. 1, 1972.

---

* Rule 18, 5th Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of

New York et al., 5th Cir. 1970, 431 F.2d 409, Part I.

Albert W. Copeland, Montgomery, Ala., G. M. Harrison, Jr., Dothan, Ala., for plaintiff-appellant; Hobbs, Copeland, Franco & Screws, Montgomery, Ala., and Merrill & Harrison, Dothan, Ala., of counsel.

Robert C. Black, Montgomery, Ala., for defendant-appellee; Hill, Hill, Stovall, Carter & Franco, Montgomery, Ala., of counsel.

Before THORNBERRY, MORGAN and CLARK, Circuit Judges.

THORNBERRY, Circuit Judge:

This action arises from an accident that occurred at Allen Stage Field, an auxiliary field used in training pilots at Fort Rucker, Alabama for simulated night conditions possibly to be encountered in combat. Student pilots there practiced flying exercises with minimum lighting conditions under Army supervision. Page Aircraft Maintenance, Incorporated (Page) was the maintenance contractor for the United States Army and as part of its duties furnished a driver for an Army-owned Hobart, a ground vehicle serving as an auxiliary power unit and used in starting aircraft during these exercises. Russell was a civilian employee of the United States serving as an instructor pilot at Allen Stage Field in connection with the Fort Rucker training program.

The facts are basically undisputed by the parties. On July 7, 1969, Russell, while walking to his helicopter in the darkness, was struck from the rear by a Hobart Auxiliary Unit operated by an employee of Page. The Hobart was equipped with head lamps which were not on at the time of the accident. The operator of the Hobart testified that the night was quite dark and without the benefit of headlights he could not see eight to ten feet in front of the machine. The noise level at the time was quite high because of the presence of numerous aircraft training in the area. Russell was thus struck from the rear by an unlighted vehicle which he could neither see nor hear. He was taken from Allen Stage Field and hospitalized at the Fort Rucker Hospital for more than thirty days. It is alleged that at the time of the trial some two years after the accident, he was still unable to return to work as an instructor pilot, the only employment for which he is equipped.

Page, in addition to an allegation of contributory negligence, contended that the Hobart was furnished by the United States, that it was being operated without lights in compliance with Army instructions, and that there was a standard operating procedure in force at the time of the accident requiring that Hobarts be operated without lights. Throughout the trial, from the opening statement to close, Page contended that it had no control over the lighting of the Hobart and that it was without any right or authority to modify the lights. Judgment was entered for Page in accordance with the jury's verdict in its favor.

During the trial, Russell sought admission of the following documents:

(1) An accident report made by an employee of Page on July 8, 1969, the day after the accident, which stated that the Hobart without lights was a hazard to some extent and which recommended the installation of beacon-type lights on top of the Hobart which would shine down toward the ground and thus not affect pilots' vision.

(2) A regulation change issued by the Army on August 1, 1970, modifying the operating procedure for the Hobart to provide for blacking out its headlights except for the bottom two inches of light.

(3) Page Safety Bulletins issued on January 19, 1970 and September 24, 1970, stating, "Vehicles are never operated . . . without lights which could prevent the driver from observing clearly any obstructions, aircraft, personnel, or rough terrain in the path of the vehicle or area of operation."

Russell urges that the district court erred in refusing to admit this evidence and denying him the right to show the subsequent modifications made on the Hobart.

■ Russell recognizes the widely-accepted general rule in such cases, as stated by Professor Wigmore:

[I]t is conceded, by almost all courts, that no act in the nature of repairs, improvements, substitution, or the like, done after the occurrence of an injury, is receivable as evidence of a consciousness . . . on the part of the owner, of his negligence, con-

nivance, or other culpability in causing the injury.

2 Wigmore, Evidence § 283 at 158 (3d ed. 1940).[1] The rule is based on the firm policy ground that the admission of such evidence would be liable to over-emphasis by the jury and would discourage owners from improving the condition causing the injury because of their fear of the evidential use of such improvement to their disadvantage. *See, e.g.*, Louisville & Nashville Railroad Company v. Williams, 5th Cir. 1966, 370 F.2d 839; Steele v. Wiedemann Machine Company, 3d Cir. 1960, 280 F.2d 380.

Conceding the applicability of these principles to the evidence in question, Russell maintains, under well-recognized exceptions to the general rule, that the documents were admissible (1) to show that Page, not the Army, had control over the operation of the Hobart; (2) to rebut evidence that there was no practical way to modify operation of the Hobart; and (3) to rebut evidence that the Hobart was being operated in the safest manner possible under the circumstances.

If the evidence is to be admitted, it must be on the basis that it tends to show Page's control over the Hobart's operation. Page made no contention, either in its pleadings or in the testimony introduced, that the Hobart's operation was incapable of improvement or that it was impractical to improve. In fact, Page's own witnesses admitted freely that it was possible to improve the safe operation of the Hobart in numerous practical ways without affecting the pilots' safety. The sole contention made was that it was impractical and in fact impossible for *Page* to modify the operating procedure because the Army owned the Hobart and constituted the sole rule-making authority over the vehicle during such night training sessions.

■ Moreover, we do not believe that the evidence offered was relevant or material to the issue of Page's control. The accident report, wherein an employee of Page recommended changes in operation which were eventually made, in no way indicates that Page itself could make the changes. At most, the report indicates that the previous mode of operation was faulty and could be easily improved. As stated before, this fact is not disputed but is rather established by Page's own witnesses. It in no way goes to the issue of control over the vehicle.

■ The Army regulation issued to Page well after the accident indicates almost conclusively that the will of the Army, not Page, controlled the Hobart's operation. The district court in refusing the admission of this document did no prejudice to Russell's cause. To the contrary, exclusion was in his interest on the issue of control.

■ The Page Safety Bulletins of January and September of 1970 refer to general procedures for driving all company vehicles at night. They in no way rebut the position that the Army prohibited the use of lights on the Hobart during night training sessions, or that the Army regulation took precedence over any such general company policy. Moreover, the September bulletin was issued well after the change in the Army regulation. This would indicate that any change was the result of a change in Army procedure and is in no way indicative of control by Page.

■ We think, in short, that the relevance of the documents in question to

---

1. City of Montgomery v. Quinn, 1944, 246 Ala. 154, 19 So.2d 529; Norwood Clinic, Inc. v. Spann, 1941, 240 Ala. 427, 199 So. 840; Gulf, M. & N. R. Co. v. Havard, 1928, 217 Ala. 639, 117 So. 223; Alabama Great Southern R. Co. v. Ensley Transfer & Supply Co., 1924, 211 Ala. 298, 100 So. 342; Collins v. Mobile & O. R. Co., 1923, 210 Ala. 23/, 97 So. 631; Burnwell Coal Co. v. Setzer, 1914, 191 Ala. 398, 67 So. 604; Adams v. Crim, 1912, 177 Ala. 279, 58 So. 442; Menard v. Boston & Maine R. Co., 150 Mass. 386, 23 N.E. 214; 2 Wigmore on Evidence, 3rd ed., § 283; Jones on Evidence § 288; Annot., 170 A.L.R. pp. 7–111; 64 A.L.R.2d pp. 1296–1323.

the issue of control is at least tenuous, and the possibility of prejudice to Page on the issue of negligence is quite great in this situation. There is some indication that Russell's counsel recognized this fact and wished the documents to be admitted solely for this reason, as he stated:

It is the plaintiff's contention that since the defendant contends that the operating procedure which [the driver] was following on the night of this accident was a safe and reasonable one that the plaintiff is entitled to show changes in that procedure occurring subsequent to the accident *as this bears on the issue of whether the conduct was reasonable and safe under the circumstances on the night of the accident.*

Under such circumstances it was not an abuse of the district court's discretion to prohibit introduction.

Affirmed.