(127 So. 213)
### CENTRAL OF GEORGIA RY. CO. v. GRAHAM.
### 6 Div. 438.

Supreme Court of Alabama.
March 27, 1930.

Nesbit & Sadler, of Birmingham, for appellant.

Altman & Koenig, of Birmingham, for appellee.

BOULDIN, J.

Action for personal injuries resulting from collision of an automobile, driven by plaintiff, with the train of defendant at a public street crossing in the town of Irondale.

The case was here on former appeal. Central of Georgia Ry. Co. v. Graham, 218 Ala. 624, 119 So. 654.

The second trial, like the first, was had on count B of the complaint, charging wantonness.

That the evidence made a case for the jury, in that the train was run at a high rate of speed over a much frequented crossing without signals of approach and without maintaining a lookout, was recognized on the former appeal. We see no reason to hold otherwise on the evidence now before us.

It is now insisted, as on former appeal, that plaintiff having testified that she looked in the direction of the approaching train before entering upon the crossing, that she is charged as a matter of law with having seen the train, although she testifies she did not, and that, having knowledge of same, the injury cannot be laid to the failure to give signals of approach, but to her own negligent act as the sole proximate cause. This doctrine was declared not applicable under the evidence presented on former appeal. In commenting on this feature of the case, we noted that certain photographs and drawings in evidence were not sent up. On the present appeal, these are sent up and the contention is again presented with the aid of these documents.

The doctrine relied upon is illustrated in the cases of Peters v. Southern Ry. Co., 135 Ala. 533, 33 So. 332, and Southern Ry. Co. v. Irvin, 191 Ala. 622, 68 So. 139, cited in former opinion. Both these cases involved footmen walking into the wake of an approaching train on an open stretch of track, the issue

648

being one of contributory negligence. These decisions point out that the duty to keep a lookout in such case is continuous, must be kept up until the pedestrian can see that no train is dangerously near. So, when the undisputed facts disclose that by a proper lookout he could not fail to see the approaching train, he cannot acquit himself of contributory negligence by swearing he looked and did not see it. Not that as matter of law he did look, as he testifies, but that, as matter of law he either did not keep a vigilant lookout, or, if he did, he saw the train.

In the present case we are not dealing with contributory negligence, but the question is whether plaintiff is to be charged as matter of law with having discovered the approaching train in time to avoid a collision and nevertheless drove her automobile into its wake at the moment it reached the crossing; and so to lay the injury to her own act as the sole proximate cause, and not to the wanton conduct of the trainmen.

Plaintiff's evidence tends to show that as she was going north on 20th street, herself and her mother being the only occupants of the automobile, she reached the point south of the crossing where the Bankhead Highway comes from the west and turns into 20th Street; that she first looked to the left to see if any cars were coming into the junction on the Bankhead Highway; that she then looked to the right, the direction from which defendant's train was coming, and did not see nor hear it; that she then looked to the left, and, her attention being arrested by the sound of a train in that direction, she continued to keep a lookout to the left until she reached the crossing, when suddenly the train came upon her car from the right.

The exact point at which plaintiff looked to the right is not precisely fixed. As a matter of inference, it may be located from 50 to 100 feet south of the crossing. There is evidence that the train was not working steam; was coasting on a slight down grade; whether smoke was being emitted from the stack to attract attention does not appear. The photographs and other evidence tend to show a background of thick woodland north of the track. Whether the conditions as to the obstructions from cross-ties stacked on the right of way south of track, and cars on a spur track were the same when the photographs were taken as when the accident occurred is not without conflict in the evidence. It appears the train was running somewhat later than schedule time.

We need not consider whether the evidence on an issue of contributory negligence, shows, as matter of law, that plaintiff was negligent either in failing to maintain a vigilant lookout or in entering upon the crossing with knowledge of the near approach of the train.

■ We have no difficulty in finding on the whole evidence that the question whether plaintiff did see the approaching train and heedless of danger drove onto the crossing was one of fact for the jury and not one of law for the court.

This is the rule applied where trainmen testify they were keeping a vigilant lookout ahead, and still testify they did not see a person clearly visible upon the track.

■■ An illustration appears in the present case. Both fireman and conductor testify that the fireman, from whose side plaintiff's car was approaching, kept a lookout until within some 150 feet of the crossing. The fireman testifies he did not see her car. Whether under the conditions the automobile was less visible than the approaching train was a question of fact, as well as whether the fireman did see the approaching car and did thereafter abandon his watch and proceed to cut off steam heat from the passenger coaches, a matter not required at the moment.

■ The affirmative charge was refused to defendant without error. Many other assignments are rested directly or indirectly upon the principles discussed. Refused charge in the eighth assignment of error is the equivalent of the affirmative charge. It does not deal with wantonness after discovery of peril by the trainmen.

■ What has been said suffices as to refused charge presented by ninth assignment of error. See former decision, supra.

■ Refused charge made the basis of the eleventh assignment of error is omissive and misleading. Assuming that the jury may have found the accident would have happened just the same if the fireman had maintained a proper lookout, the charge does not negative such finding because of his negligence after discovery of peril.

Given charge, which we have numbered 17, covers the same matter in quite as favorable light as should have been given.

Whether plaintiff actually saw the approaching train by having looked in that direction was a question of fact, regardless of whether there were intervening obstructions.

■ Charge made the basis of assignment of error No. 13 was refused without error. The same applies to assignment No. 16.

Assignment of error No. 17 presents a refused charge the same in substance and effect as given charge which we have numbered 16.

■ In his oral charge, the court correctly defined wantonness as follows:

"In order for one to be guilty of wanton conduct, the party doing the act or failing to act must be conscious of his conduct, and, without having the intent to injure, is conscious from his knowledge of existing conditions and circumstances that injury will likely or probably result from his conduct, and,

with a reckless disregard of consequences, does some act or omits some known duty that results in injury. * * * "

"As I have explained to you in the defining of wantonness, there must be a conscious act or a conscious failure to act, with a knowledge that injury will probably result, and with a reckless disregard of consequences."

Such instruction with given charges, numbered by us Nos. 13 and 14, sufficiently covers rules presented in assignments of error Nos. 10 and 12.

■ Refused charge made the basis of assignment of error No. 14, so far as it announces a correct principle, may be regarded as covered by given instructions.

Aside from this, it cannot be said that in every case there is no duty to give emergency warning to one who may be aware of the approach of a train, if not aware of its dangerously near approach at unusually high speed. If the trainmen are first aware of the imminence of peril, they should apply every means to avert it.

We find no error to reverse.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.