199 So. 33

**SLOSS–SHEFFIELD STEEL & IRON CO. v. PEINHARDT.**

**6 Div. 637.**

Supreme Court of Alabama.

March 14, 1940.

Rehearing Denied April 11, 1940.

Further Rehearings Denied Oct. 17, and Nov. 12, 1940.

208

Kingman C. Shelburne and Bradley, Baldwin, All & White, all of Birmingham, for appellant.

Richard S. Riley and Coleman, Spain, Stewart & Davies, all of Birmingham, for appellee.

THOMAS, Justice.

Counts of the complaint that went to the jury were the first and third counts of the complaint as last amended. To these counts there were interposed the plea of the general issue and some special pleas. The pleas that went to the jury, other than the general issue, all set up contributory negligence on the part of Willingham, the employee of plaintiff, who was working for the plaintiff at the time of the alleged collision. A jury trial was had of the cause.

A motion for a new trial, verdict and judgment having been had in favor of the plaintiff and against the defendant, was overruled, to which ruling the defendant duly and legally excepted and prosecutes this appeal.

The first assignment of error is based on the refusal of the trial court to give the general affirmative charge requested in writing by defendant.

The rules governing the giving and refusing of the affirmative instruction are well understood and need not be repeated. McMillan v. Aiken, 205 Ala. 35, 40, 88 So. 135; Tobler v. Pioneer Min. & Mfg. Co., 166 Ala. 482, 52 So. 86; Dortch Baking Co. v. Schoel, 239 Ala. 266, 194 So. 807.

Certain undisputed facts are to be considered. The driver Willingham testified that he had good head lights and windshield wiper and "could see out in front;" that he "had seen this railroad on 25th Street before" and crossed over "on 25th Street before;" that it was drizzling rain and dark and the street was damp; that he did not hear a whistle' or bell; that there was no crossing sign. The witness testified that the state highway was 26th Street and west of 25th Street; that he entered the city most of the time by 26th Street, traversed 26th Street two-thirds more times than he went over 25th Street and crossed over that railroad on 25th Street. Thus the driver knew the railroad crossings and knew also of the location of a street light on the corner.

The witness further testified of the locus in quo in reference to some map or drawing exhibited to him that he did not know there were any obstructions or houses on the other side of the street and that from the crossing 25th Street is straight for a block or two toward town; that he was not familiar with the street and had "never paid much attention to it;" that he "saw the light of another car coming on the other side of the railroad" crossing enough to realize it and that it shone in his windshield. That he "didn't know the railroad track was there and couldn't say how far it was back of the track going out of town" when he first saw the light of the other automobile, at which time "I was driving somewhere along fifteen

or twenty miles an hour" and did not "hear a whistle or bell or see any light from the train," that as to whether there was anything to obstruct "my view from where I was over the railroad track and across up there I don't say there was after I passed the house." The witness further testified that it was level to the railroad track and that he came in contact with the tender of the engine, the first thing crossing the street; that he didn't have time to put on his brakes and didn't know positively whether he put his foot on the brakes or not; that it looked to him that the train was about a block away when it stopped, and that the headlight of the engine was on but there wasn't any light in the rear; that the train was going across the crossing at about the same speed he was going and the train hit "me and went on up to 26th Street before it stopped."

The witness further testified that he was an efficient automobile truck driver, his brakes were good that night and that he drove a ton and one-half Chevrolet Truck; that he didn't know exactly what distance it would take to stop when driving fifteen or twenty miles an hour after applying the brakes.

On redirect examination the witness further testified that he couldn't tell about when he made a trip over 25th Street before; that he saw the headlight on the engine after it was down there, that "the headlight was on the opposite end of the engine that was approaching me." That he was on the right hand side of the road near the curb and that he came from Cullman on 26th Street, crossing 25th Street on Fifth avenue down 26th Street to First Avenue and crossing over that to get down to the market. Such was his usual line of travel.

The witness Willingham, in his direct examination, stated as follows:

"I was going to Cullman. I had some oranges on the truck, fifteen cases. Oranges were the only thing I had. I was carrying them to Cullman. I had frequently made trips back and forth in my truck from Cullman to Birmingham carrying produce from one place to another. The route I usually travelled was 26th Street. This accident happened on 25th Street. Those railroad tracks where the accident happened go straight across. That is just a railroad crossing there, there was no street intersection there.

Those tracks are level with the pavement, you couldn't see the tracks until you got right on it; they are down in the pavement. There is no sign out there indicating a railroad; there is no stop sign there, or other designation; there is no sign warning you there is a railroad track there. I did not frequently travel on 25th Street; I was not familiar with that street, I hadn't been over it but a mighty few times. I did not know those tracks were there at that point before the accident. * * * * * As I approached the place where the accident happened, I did not see any train approaching the crossing. When I first discovered the train in my judgment I was something like I would figure 20 feet from the railroad tracks; I couldn't say if it could have been over 20 feet or less than 20 feet; somewhere around 20 feet is the best of my judgment. I was running somewhere around 15 or 20 miles an hour, somewhere in that neighborhood. I had never, at any time before discovering this train on this track within that distance of the track, known that the train was approaching; there was a car coming on the other side, and the lights were shining, this car was coming from the opposite direction, from the way I was going, and *I was watching this car, and you see this train was backing in, didn't have no light on the back part of the tender,* and I never seen the train until it come right across, and I was just about as far from the center of the track as it was from the center of the street, and I couldn't run in front of it, and I just tried to turn—I said there was no railroad crossing sign there. This train was moving when I saw it; the back end was approaching first, the tender part was coming backwards, * * *."

The testimony of this driver shows that before he entered upon the crossing, he had not observed the rule of "Stop, Look and Listen;" there were no obstructions to impair his view; the engine was backing across the crossing at 25th Street and the tender and a portion of the engine had cleared the crossing prior to the collision. The photographs in evidence show that a distance of about 200 feet from the crossing there was nothing to obstruct the driver's view. Yet, Willingham says he did not see the engine until just before the collision.

In Peters v. Southern Ry. Co., 135 Ala. 533, 33 So. 332, and Richards v. Sloss,

Sheffield Steel & Iron Co., 146 Ala. 254, 41 So. 288, it is held that notwithstanding the denials of the driver, if the established facts are to the contrary on the point at issue, such denial did not create a material conflict in the evidence which would require a submission of such facts to the jury. The rule ot these cases was recently adverted to in Metropolitan Life Ins. Co. v. James, 228 Ala. 383, 153 So. 759.

To the same effect is the ruling in Central of Georgia Ry. Co. v. Graham, 220 Ala. 645, 647, 127 So. 213, 215, when the court declared: "The doctrine relied upon is illustrated in the cases of Peters v. Southern Ry. Co. 135 Ala. 533, 33 So. 332, and Southern Ry. Co. v. Irvin, 191 Ala. 622, 68 So. 139, cited in former opinion. Both these cases involved footmen walking into the wake of an approaching train on an open stretch of track, the issue being one of contributory negligence. These decisions point out that the duty to keep a lookout in such case is continuous, must be kept up until the pedestrian can see that no train is dangerously near. So, when the undisputed facts disclose that by a proper lookout he could not fail to see the approaching train, he cannot acquit himself of contributory negligence by swearing he looked and did not see it. Not that as matter of law he did look, as he testifies, but that, as matter of law he either did not keep a vigilant lookout, or, if he did, he saw the train."

In Cunningham Hardware Co. v. Louisville & N. R. Co. 209 Ala. 327, 332, 96 So. 358, 363, it is said:

"It is therefore settled in this jurisdiction that it cannot be affirmed as matter of law, in every case and under all circumstances, that there is an absolute duty to stop, look, and listen, before a traveler, whether on foot or in a vehicle, may go upon a railroad crossing. This was well stated in Louisville & N. R. Co. v. Williams, 172 Ala. 560, 578, 55 So. 218, 223, as follows:

" 'What is, or is not, ordinary care often depends upon the facts of the particular case. The rule, "stop, look, and listen," is not arbitrary or invariable as to time and place. It may depend in some measure upon the familiarity of the one passing, with the place of crossing; and he cannot always be said to be guilty of contributory negligence, because he failed to stop, look, or listen at one particular time or place, rather than at another.' "

See also Louisville & Nashville Ry. Co. v. Cunningham Hardware Co., 213 Ala. 252, 104 So. 433.

In Southern Ry. Co. v. Miller, 226 Ala. 366, 147 So. 149, 150, touching the duty of a driver of a car at a railroad crossing, this court recently observed: "Plaintiff, a resident of the neighborhood and entirely familiar with the crossing, in disregard of the doctrine of 'stop, look, and listen,' ran his Buick car, at an estimated speed of ten or fifteen miles per hour, into the side of defendant's engine tank, and recovered a judgment for the damages sustained. There were no obstructions to impair his view, but the 'visibility was not good,' due to cloudy conditions following rain and failure of his windshield wiper to properly function. Manifestly there could be no recovery based upon any initial negligence of defendant. Alabama Great So. Ry. Co. v. Durr, 222 Ala. 504, 133 So. 56; * * *."

See also Roberts v. Louisville & N. R. Co., 237 Ala. 267, 186 So. 457.

The later case. of Johnson v. Louisville & N. R. Co., 227 Ala. 103, 148 So. 822, held:

"One approaching railroad crossing must stop, look, and listen, if exercise of sense of sight does not fully disclose situation, and failure to do so is negligence.

"One approaching railroad crossing must stop, look, and listen at time and place which will enable him to accomplish purpose.

"Duty of one approaching railroad crossing was not discharged by stopping some distance off as law requires continuing duty to see that way is clear before attempting to cross."

At the risk of repetition, we will say, that Willingham testified that there was an automobile approaching him on 25th Street on the other side of the railroad crossing and that the lights from that automobile were shining towards the truck that he was driving. No consequence can be attached to this fact. In Alabama Great Southern R. Co. v. Durr, 222 Ala. 504, 133 So. 56, 57, the court said: "The fact that there was an automobile approaching plaintiff from the opposite side of the railroad, with a strong headlight, but at right angles to the approach of the

212

train, and that there was a street light at the intersection, and a crowd of people in the street after a meeting in a church situated near by should not cause a different conclusion."

◼ Adverting to the contention by plaintiff that there was no railroad sign at the crossing, this was not made an issue under the pleadings in this case, and, therefore, had nothing to do with the negligence in operation charged by this plaintiff against defendant.

The principle to be applied was pronounced by the Court of Appeals in Central of Georgia Ry. Co. v. Pittman, 16 Ala. App. 567, 80 So. 141.

In Northern Alabama Railway Co. v. Hawkins, 202 Ala. 632, 81 So. 574, 575, this Court held that:

"A charge of negligence in the operation of a car is not supported by proof of a defective brake. Bell v. Alabama, etc., Ry. Co., 108 Ala. 286, 19 So. 316; Knight v. Tombigbee Valley R. Co., 190 Ala. 140, 67 So. 238.

"The evidence does not show any negligence on the part of any one in the operation of the car, but merely a failure of the brake to work properly. On this theory of the case, also, defendant was entitled to the affirmative charge as requested."

We are of opinion that there was error in declining to give the general affirmative charge requested in writing by defendant. The judgment of the circuit court is reversed and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.

On Rehearing

THOMAS, Justice.

The question now argued for new trial is that the opinion did not discuss subsequent negligence. This phase of the case was not specifically called to the attention of the court, as we understood the same.

◼ It is true that the charge of simple negligence embraced subsequent negligence (Alabama By-Products Corp. v. Rutherford, Ala.Sup., 195 So. 210;[1] Boyette v. Bradley, 211 Ala. 370, 100 So. 647), and the phase of contributory negligence embraced subsequent negligence. Mobile Light & R. Co. v. Gadik, 211 Ala. 582, 100 So. 837; Mobile Light & R. Co. v. Logan, 213 Ala. 672, 106 So. 147.

◼ We have again considered the evidence by the engineer, the flagman, the fireman and the driver of the truck and cannot find that there was any subsequent negligence shown. The presence in a city of a truck and its driver, approaching a railroad crossing from a half to one block away, did not place the truck or its driver in imminent danger. No reasonably prudent person would have been impressed that a driver would fail to stop, look and listen before proceeding to this railroad crossing and the subsequent collision.

This court has held that a replication of subsequent negligence is not required to be pleaded by way of answer to an appropriate plea of contributory negligence. Mobile Light & R. Co. v. Gadik, supra; Mobile Light & R. Co. v. Logan, supra.

◼ The trial court erroneously charged the jury that § 9954 of the Code had application to the present case, where the collision occurred in the City of Birmingham, as to the erection and maintenance of signs at railroad crossings. Said section has no application here in that the evidence clearly showed that the alleged accident and collision took place within the corporate limits of the City of Birmingham. Appel v. Selma St. & S. R. Co., 177 Ala. 457, 59 So. 164.

◼ The majority of the court, consisting of GARDNER, C. J., BOULDIN, FOSTER, and LIVINGSTON, JJ., are of the opinion that the question of contributory negligence was properly submitted to the jury and approve the opinion of the Court of Appeals in the case of Sloss-Sheffield Steel & Iron Co. v. Willingham, 29 Ala.App. 569, 199 So. 15, on that question.

THOMAS and KNIGHT, JJ., dissent, and hold that the affirmative charge on that subject was proper on the basis of the discussion of the subject by THOMAS, J., in petition for certiorari to the Court of Appeals in Sloss-Sheffield Steel & Iron Co. v. Willingham (Ex parte Sloss-Sheffield Steel & Iron Co.), 199 So. 28.

[1] 239 Ala. 413.

BROWN, J., dissents on the basis stated by him in the case of Ex parte Sloss-Sheffield Steel & Iron Co., supra.

All the Justices concur that there was error in the charge of the court giving application of § 9954 of the Code, as discussed in the opinion in Ex parte Sloss-Sheffield Steel & Iron Co., supra, by THOMAS, J.

The application for rehearing is overruled.

All the Justices concur in this result.

