40 So.2d 73

**CALLAWAY v. ADAMS.**
**4 Div. 502.**

Supreme Court of Alabama.
April 14, 1949.

138

A. M. McDowell and McDowell & Mc-Dowell, all of Eufaula, and R. E. L. Cope, Jr., and Cope & Cope, all of Union Springs, for appellant.

140

Lawrence K. Andrews, of Union Springs, for appellee.

SIMPSON, Justice.

Alabama Highway No. 6 makes a grade crossing with the tracks of the Central of Georgia Railway Company within the city limits of Union Springs. On November 17, 1947, about 7:30 p. m., in switching cars, the defendant had left a freight train standing across and blocking this highway, where it remained unlighted, without guard or flagman, for a period of several minutes. The appellee, Adams, was traveling this highway westwardly in his K-7 International Tractor and 28-foot refrigerator trailer. His tractor was equipped with proper headlights and both vehicles with standard brakes in good mechanical condition. He did not know the crossing was there and did not observe the train until just before reaching it, when he was unable to come to a complete stop and his vehicle collided with one of the cars and was demolished.

The case was brought to issue on Count 1 for simple negligence charged against the defendant, its agents or servants, etc., in so obstructing the highway, and pleas of the general issue and contributory negligence.

The following facts are fully sustained by plaintiff's evidence: By reason of the downgrade of the highway leading west toward the crossing, lights on motor vehicles traveling in that direction are focused only on the roadway until in immediate vicinity of the crossing, at which point the highway makes an abrupt upgrade and the lights then become focused on a view of the crossing. This was the situation with which the plaintiff was confronted immediately as he approached the crossing. The lights of his vehicle were in good order and would reveal an object at considerable distance under normal conditions, but by reason of this topography the presence of the train on the track was not revealed and

could not be discovered until within 20 or 30 feet therefrom, and traveling then at a rate of about 20 or 25 miles an hour, he was unable to stop and avoid the collision, since it required about 120 feet distance to bring his vehicle to a halt. The plaintiff was a stranger and not familiar with the locus in quo and had no knowledge or notice of the presence of the car obstructing the highway until too late to stop. The railroad company did maintain on the east side of its track at the crossing a signal light, but due to the view being obstructed by overhanging branches of pecan trees growing on property adjacent to the defendant's right of way, these signal lights could not be observed by travelers going in that direction until just before reaching the crossing. According to plaintiff's witnesses, no other warning was given of the presence of the train, nor did the personnel in charge thereof undertake to ascertain the condition of the crossing as regards hazard to the traveling public when the train was left standing there.

As stated, these facts were fully sustained by the evidence offered for the plaintiff, including the testimony of two ministers of the gospel, who were traveling immediately ahead of the plaintiff as plaintiff attempted to pass them, and who witnessed the collision, and were just able to bring their vehicles to a stop before reaching the crossing; and a member of the Alabama Highway Patrol, who investigated the accident immediately thereafter and observed the condition of the highway, the signal light at the crossing, and its obscurity from view by the pecan grove.

■ The principal insistence for error is the action of the trial court in refusing to give the general affirmative charge for the defendant as regards its own negligence and as to the contributory negligence of the plaintiff. We do not think the authorities sustain such a position. A careful study of the record in the light of the governing authorities convinces us that the question of negligence of the defendant in so obstructing the highway was a disputed issue of fact, which required the refusal of the affirmative charge. It was open to the jury to conclude against the defendant on the theory that the plaintiff was not sufficiently warned of the presence of the train to avert the accident by one such as he, who was unacquainted with the crossing, did not see the train, and by exercising reasonable diligence could not have discovered its presence in time to avert the accident.

The defendant argues to sustain the contention because of the line of cases holding that on the facts there considered the presence of the train on the crossing was held to be sufficient warning and notice of its presence. Southern R. Co. v. Lambert, 230 Ala. 162, 160 So. 262; Southern R. Co. v. Miller, 226 Ala. 366, 147 So. 149; Roberts v. Louisville & N. R. Co., 237 Ala. 267, 186 So. 457. These cases are inapposite to the facts presented by the plaintiff's evidence.

■ The pertinent principle is well stated in St. Louis-San Francisco R. Co. v. Guthrie, 216 Ala. 613, 615, 114 So. 215, 217, 56 A.L.R. 1110:

"The rule sanctioned by the authorities * * * is that, in order to charge the railroad with negligence in such a case, it must be shown that defendant's employees in charge of the train, in the exercise of reasonable care, ought to know that on account of darkness the cars upon the crossing are such an obstruction that people traveling along the highway in automobiles properly equipped with lights and carefully operated at a reasonable rate of speed would be likely to come into collision with them; in other words, the employees of the defendant, in the absence of some peculiar environment, are justified in believing that travelers in automobiles properly lighted and driving at reasonable speed will observe the cars upon the crossing in time to avoid coming into collision with them."

To the same effect are Southern R. Co. v. Lambert, supra; Domite v. Thompson, La. App., 9 So.2d 55; William A. Smith Const. Co., Inc., v. Brumley, 10 Cir., 88 F.2d 803; 44 Am.Jur. 741, § 501; 3 Blashfield's Cyclopedia of Automobile Law and Practice, Perm.Ed., § 1794.

■ These authorities take notice of the fact that where there is "some peculiar environment"—some special condition of hazard to motorists—a duty of the railway company may arise to provide special warnings or safeguards to motorists, notwith-

standing the assumption that the driver of the motor car will use ordinary care. As Blashfield puts it:

"The discharge of its common-law obligation of ordinary care, may at times impose upon the railroad the duty of giving warning of the position of a train or car, standing unlighted and invisible across or upon a public crossing, after dark; but no duty to warn travelers along the highway of the presence of cars on the crossing arises when there is nothing in the surrounding physical conditions which affords any reason for anticipating an injury to those who are themselves exercising due care." § 1794, pages 191–192.

■ Here the circumstances bring the case within the exception. The facts adduced afford a proper inference that by reason of the topography and the grade and course of the highway and the overhanging tree limbs obstructing the signal light from view, the presence of the train could not, by the exercise of reasonable care, be discovered until immediately upon it, thus disclosing an environment producing such special circumstances or conditions of hazard as made it a jury question as to whether or not it was incumbent upon the employees of the railroad company to give the plaintiff— a stranger to the situation—some additional warning of the presence of the train.

■ Under the same principle it was proper to allow the introduction in evidence of the physical conditions at the scene and of the overhanging branches of the pecan trees, which hid the signal light from view, as bearing on the question of whether or not there were such special conditions of hazard at the crossing.

The contention that there was error in refusing the general affirmative charge as to the contributory negligence of plaintiff is sought to be sustained by the generally stated rule of absolute duty at any railroad crossing where cars and locomotives are liable to be moving of anyone attempting to cross the railroad track to stop, look and listen, and a denial of recovery as for simple initial negligence of the railroad if the failure to discharge such duty proximately caused the injury. Atlantic Coast Line R. Co. v. Jones, 202 Ala. 222, 80 So. 44; John-

ston v. Southern R. Co., 236 Ala. 184, 181 So. 253.

■ The doctrine is rested on the duty of the traveler to keep a continuous lookout as he approaches a railroad crossing until he can see that no train is dangerously near. So, when the undisputed facts disclose that by a proper lookout he could not fail to see the train, he cannot acquit himself of contributory negligence by saying he looked and did not see it.

■ But it cannot be affirmed as a matter of law in every case and under all circumstances that there is an absolute duty to stop, look and listen before a traveler may go upon a railroad crossing, as where one, in the exercise of reasonable care, did not know of the crossing. "What is, or is not, ordinary care often depends upon the facts of the particular case. The rule, 'stop, look, and listen,' is not arbitrary or invariable as to time and place. It may depend in some measure upon the familiarity of the one passing, with the place of crossing * * *". Louisville & N. R. Co. v. Williams, 172 Ala. 560, 578, 55 So. 218, 223.

■ Thus the principle has been developed that the arbitrary rule of stop, look and listen is affected by whether or not the plaintiff knew or by reasonable care could have known he was about to cross the railroad tracks. Sloss-Sheffield Steel & Iron Co. v. Willingham, 243 Ala. 352, 10 So.2d 19. The rule is here governing and required the question of the plaintiff's alleged negligence in failing to stop, look, and listen to be submitted to the jury for determination.

This is settled doctrine in this jurisdiction. Other cases illustrative are: Sloss-Sheffield Steel & Iron Co. v. Peinhardt, 240 Ala. 207, 211, 199 So. 33; Central of Georgia R. Co. v. Graham, 220 Ala. 645, 647, 127 So. 213, 215; Cunningham Hardware. Co. v. Louisville & N. R. Co., 209 Ala. 327, 332, 96 So. 358, 363.

The remaining insistences of error relate to the action of the court in refusing other of the defendant's written charges and the overruling of the motion for a new trial. We entertain the view that the action of the court in each instance was proper and

without substantial prejudice to the defendant.

Charge 4 (R. 69) might not have been predicate for error if given, Caudle v. Birmingham Electric Co., 247 Ala. 34, 40, 22 So.2d 417, but charges of this kind have been consistently condemned as singling out and unduly emphasizing the evidence. Central of Georgia R. Co. v. Wilson, 215 Ala. 612(17, 18), 111 So. 901; Miller v. Whittington, 202 Ala. 406(14), 80 So. 499; 18 Alabama Digest, Trial, ⊜244.

Charge 5 (R. 69) sought to state the rule of St. Louis-San Francisco R. Co. v. Guthrie, supra, and others, but was rendered misleading and inapposite in pretermitting a consideration of special circumstances which might indicate conditions of hazard.

Charge 6 (R. 69), whether good or bad, was substantially covered by given Charge 4 (R. 68).

Charges 7 and 9 (R. 70) were abstract in that the evidence offered no inference of any attempt of the plaintiff after being aware of the train and conscious of the danger, to cross the tracks of the defendant.

Charge 8 (R. 70) pretermits a consideration of whether or not the plaintiff knew or by the exercise of reasonable care should have known of the crossing in time to obey the duty to stop, look and listen. Sloss-Sheffield Steel & Iron Co. v. Willingham, supra.

Charge 10 is obviously faulty in overlooking the rule of the Willingham and other cases and pretermitting knowledge on part of appellee of presence of the crossing. Willingham case, supra, 243 Ala. 352(8, 9), 10 So.2d 19.

Charge 11 is likewise subject to the fault of Charge 10 and also pretermits a consideration of whether there might have been some peculiar environment which required additional or other mode of warning than the presence of the train on the crossing. St. Louis-San Francisco R. Co. v. Guthrie, supra.

Finally, our view is that the motion for new trial was overruled without error. The case presented a question for the jury on conflicting evidence and inferences arising therefrom and the conclusion reached was not so out of harmony with the weight of the evidence as to justify our disturbing it.

On a careful and studious consideration of the whole record, we think the judgment should be affirmed and it is so ordered.

Affirmed.

BROWN, LIVINGSTON, and STAKELY, JJ., concur.