**LOUISVILLE & NASHVILLE RAILROAD COMPANY, Appellant,**

v.

**Rosalie BYRD, Appellee.**

**LOUISVILLE & NASHVILLE RAILROAD COMPANY, Appellant,**

v.

**Ollie BYRD, Sr., Appellee.**

**LOUISVILLE & NASHVILLE RAILROAD COMPANY, Appellant,**

v.

**Ollie BYRD, Jr., Appellee.**

Nos. 18934–18936.

United States Court of Appeals Fifth Circuit.

Feb. 1, 1962.

---

588

C. B. Arendall, Jr., W. B. Hand, Mobile, Ala., for appellant, Hand, Arendall, Bedsole, Greaves & Johnston, Mobile, Ala., of counsel.

Harry H. Riddick and Oliver J. Latour, Jr., Mobile, Ala., for appellees, Hamilton, Denniston, Butler & Riddick, Mobile, Ala., of counsel.

Before RIVES, CAMERON and BROWN, Circuit Judges.

RIVES, Circuit Judge.

These three cases arise out of a collision at a railroad crossing and were consolidated for trial. The automobile was being driven by Mrs. Rosalie Byrd and was also occupied by her son, Ollie Byrd, Jr., the owner of the vehicle. Ollie Byrd, Sr., the husband of Rosalie Byrd, sued for expenses of treatment, and loss of services and consortium. Judgments were entered upon jury verdicts in favor of Rosalie Byrd, $18,500.00, Ollie Byrd,

Jr., $7,500.00, and Ollie Byrd, Sr., $4,-500.00.

The collision occurred at about 2:30 o'clock on the morning of Sunday, January 25, 1959, at the intersection of Hurtel Street, a public street in Mobile, Alabama, and the main line tracks of the Louisville & Nashville Railroad Company. The automobile was traveling west on Hurtel Street, and the train was proceeding southwestwardly to cross Hurtel Street at an angle of about 45 degrees. The automobile came near to clearing the crossing, the point of impact being approximately at its right rear wheel.

The district court granted the defendant's motion that the plaintiffs were not entitled to recover on their charge of willful or wanton misconduct, and no review of that ruling is requested. The cases were submitted to the jury on issues of the defendant's simple initial negligence and subsequent negligence. In the cases of the driver, Rosalie Byrd, and her husband Ollie Byrd, Sr., the issue of contributory negligence as a defense to simple negligence was also submitted. The court, ex mero motu, charged that as a matter of law Ollie Byrd, Jr., was not himself guilty of contributory negligence and was not responsible for any negligence on the part of his mother, the driver of the automobile. As to all three plaintiffs the court declined to submit the issue of subsequent contributory negligence.

The appellant does not make a very strong insistence that there was no sufficient evidence of *any* simple initial negligence, but comes near conceding that jury questions were presented on the issues of blowing the whistle or ringing the bell as required by State statute [1] and of exceeding the speed limit

1. "§ 170. *Duty of engineer as to ringing bell and blowing whistle.*—The engineer or other person having control of the running of a locomotive on any railroad, must blow the whistle or ring the bell at least one-fourth of a mile before reaching any public road crossing, or any regular station or stopping place on such railroad, and continue to blow the whistle or ring the bell at short intervals, until it has passed such crossing, or reached such station or stopping place. He must also blow the whistle or ring the bell immediately before, and at the time of leaving such station or stopping place; and also immediately before entering any curve crossed by a public road, where he cannot see at least one-fourth of a mile

prescribed by city ordinance,[2] its brief stating:

"On these points there was conflicting evidence. If you construe the testimony most favorably to the plaintiffs, it could be argued that there is support for a jury to find that the whistle was not blown. As to the bell, the problem is more difficult, all the testimony contra being of a negative nature only. Since Mr. Hall testified that in his opinion the train was going fifty (50) miles an hour, though he stated he had never had an occasion to observe and gauge speeds of trains prior to this occurrence, it could be argued by plaintiffs that the jury was entitled to find that the train was exceeding the thirty (30) mile an hour rate testified to by the engineer and fireman."

On the matter of the sufficiency of signs warning motorists to stop, the appellant strongly insists that as a matter of law it was not negligent, and it even more strongly insists that the driver's failure to stop, look and listen constitutes contributory negligence barring any recovery for simple negligence. Title 48, Sec. 172 of the 1940 Code of Alabama provides that:

"Every railroad company must erect, at all points where its road crosses any public road, at a sufficient elevation to admit of the free passage of vehicles of every kind, a sign, with large and distinct letters placed thereon, to give notice of the proximity of the railroad and warn persons of the necessity of looking out for the cars."

In Sloss-Sheffield Steel & Iron Co. v. Peinhardt, 1940, 240 Ala. 207, 199 So. 33, 37, the Alabama Supreme Court stated:

"Said section has no application here in that the evidence clearly showed that the alleged accident and collision took place within the corporate limits of the City of Birmingham. Appel v. Selma St. & S. R. Co., 177 Ala. 457, 59 So. 164."

The appellee insists that statement was dictum. We need not stop to inquire, for a like statement in the case just preceding, Sloss-Sheffield Steel & Iron Co. v. Willingham, 1940, 240 Ala. 294, 199 So. 28, 32, is clearly the sole point on which that case was decided. See Sloss-Sheffield Steel & Iron Co. v. Littrell, 1944, 246 Ala. 58, 18 So.2d 709, 712.

The appellant had actually erected cross-buck signs on each side of its tracks at this crossing, and appellee argues that thereby it assumed a duty and that liability may be predicated on its failure to maintain the sign on the side from which the automobile approached so as to constitute adequate warning of the crossing.[3] There was no evidence, however, that Mrs. Byrd knew of or re-

---

ahead, and must approach and pass such crossing at such speed as to prevent accident in the event of an obstruction at the crossing. He must also blow the whistle or ring the bell, at short intervals, on entering into, or while moving within or passing through any village, town, or city. He must also, on perceiving any obstruction on the track, use all the means within his power, known to skillful engineers, such as applying brakes and reversing engine, in order to stop the train." Code of Ala.1940, Title 48, § 170.

2. A Mobile City ordinance establishes a speed limit of 30 miles per hour for trains at the place of collision. In Alabama, violation of a city ordinance rel-

ative to speed of a train is negligence per se, Roberts v. Louisville & N. R. Co., 237 Ala. 267, 186 So. 457 and Louisville & N. R. Co. v. Loyd, 186 Ala. 119, 65 So. 153.

3. Appellee insisted that limbs of a Mimosa tree, though without leaves or foilage, overhung and tended to break the silhouette of the cross-buck sign, that other trees furnished a dark background for the sign, and that the reflective sheeting on the sign was deteriorated. Mrs. Byrd admitted that she was familiar with cross-buck signs marking railroad tracks and that the sight of such a sign, without reading anything on it, would mean to her that it marked the presence of a railroad track.

lied on the presence of the cross-buck sign. In fact she took the contrary position. All of the Alabama cases cited by the appellee to the point of an assumed duty [4] involve knowledge and reliance on the part of the driver, which seem to us essential prerequisites to liability on that theory.

The general duty of a railroad company to warn of a crossing is stated in Southern Ry. Co. v. Lambert, 1935, 230 Ala. 162, 160 So. 262, 263:

> "This court, in line with the great weight of authority, has declared the rule that, in the absence of statute, or special conditions of hazard to motorists, there is no duty on the railway company to provide special warning or safeguards to motorists, either in the day or nighttime, to prevent collisions with cars standing on such crossing. The law requires motorcars to be equipped with adequate headlights, and that they be not run at such speed that an obstruction, such as a freight car, cannot be discovered in time to come to a stop. Others are not required to take precautions against one's negligence. Otherwise stated, one may assume that another will take ordinary care."

■ While in that case cars stopped on the crossing were held to constitute adequate warning, the principle is that any reasonably adequate warning of the crossing will suffice.

■■ There is an exception to this general rule when some peculiar environment, some special condition of hazard to motorists may give rise to a duty of the railroad company to provide special warnings. Callaway v. Adams, 1949, 252 Ala. 136, 40 So.2d 73. Under all of the facts and circumstances of the present case, however, the warnings actually present we hold to be adequate as a matter of law. Compare Watson v. Birmingham Southern R. Co., 1953, 259 Ala. 364, 66 So.2d 903. Facing the approach of the

automobile was an Alabama stop-law sign clearly visible within the range of the headlights, in addition to the railroad cross-buck sign. There was a lighted street lamp at the crossing. The weather was clear and the road was dry. The automobile had not only to pass the two signs, but also to cross two sets of tracks before getting to the main line on which the train was approaching. Approaching from the direction of the Byrd vehicle about 25 or 30 feet from the track, the street makes a slight incline to the grade level of the track. The evidence, along with a careful inspection of the very clear photographs, leaves us of the clear view that the cautionary warnings were adequate.

The automobile did not change speed, but continued on at the same rate it was traveling, between 25 and 30 mph, until the moment of collision.

Mrs. Byrd had been over the crossing before and knew that there was a crossing somewhere in the vicinity, but did not know its exact location. Ollie Byrd, Jr., testified to at least that much, and probably a little more, knowledge of the crossing.

Mrs. Byrd apparently suffered from traumatic amnesia and did not remember anything about the collision. Ollie Byrd, Jr., testified that he had his head down, taking a rock out of his shoe, as they approached the crossing, and that the first he knew of the impending collision was when he looked up and saw a light out of the right-hand glass.

■ The railroad tracks were embedded in the pavement and were not by themselves sufficient warning to a stranger of the presence of the crossing. Sloss-Sheffield Steel & Iron Co. v. Willingham, 1942, 243 Ala. 352, 10 So.2d 19. There is an exception to the stop, look and listen rule in Alabama when the driver has no knowledge of the existence of the crossing and it is not protected by adequate warnings. Sloss-Sheffield Steel & Iron Co. v. Willingham, supra; Calla-

4. Birmingham Southern R. Co. v. Harrison, 1919, 203 Ala. 284, 82 So. 534; Washington v. Birmingham Southern R. Co., 1919, 203 Ala. 295, 82 So. 545; Louisville & N. R. Co. v. Clark, 1920, 205 Ala. 152, 87 So. 676, 14 A.L.R. 695.

way v. Adams, supra. Here, Mrs. Byrd was not a complete stranger to the crossing, and, as we have held, the warnings of its existence were adequate as a matter of law. Clearly, Mrs. Byrd's failure to stop, look and listen before driving upon the track constitutes contributory negligence as a matter of law, and bars any recovery on her part or on the part of her husband, grounded upon any initial negligence of the defendant. Terminal Transport Co. v. Central of Georgia Railway, 1961, 272 Ala. 495, 133 So.2d 29.

In Alabama, ownership of the automobile raises an administrative presumption that it is being operated in the owner's business. Cox v. Roberts, 1946, 248 Ala. 372, 27 So.2d 617, 619; Grimes v. Fulmer, 1938, 235 Ala. 645, 180 So. 321; Mobile Pure Milk Co. v. Coleman, 1935, 230 Ala. 432, 161 So. 829, 830; Tullis v. Blue, 1927, 216 Ala. 577, 114 So. 185, 187. The evidence in this case did not clearly refute that presumption. Ollie Byrd, Jr., the owner of the automobile, had driven his mother to a dance. He asked his mother to drive home and she agreed. The evidence presented a question of fact to be determined by the jury as to whether Mrs. Byrd was driving as her son's agent. The issue should also have been submitted as to whether Mrs. Byrd and her son were engaged in a joint enterprise and were co-adventurers. Day v. Downey, 1952, 256 Ala. 587, 56 So.2d 656, 659; Downes v. Norrell, 1954, 261 Ala. 430, 74 So.2d 593; Whiddon v. Malone, 1929, 220 Ala. 220, 124 So. 516.

We hold therefore that the court erred in submitting Mrs. Byrd's case and that of her husband to the jury on the issue of defendant's simple, initial negligence, because she and her husband were barred from recovery on that issue by her contributory negligence. The court erred also in charging *ex mero motu* that his mother's negligence was not imputable to Ollie Byrd, Jr. Further we think that it was open to the jury to find Ollie Byrd, Jr., himself guilty of contributory negligence, if the jury believed that he knew of the existence of the track and of his mother's relative unfamiliarity with its location, and with such knowledge became inattentive to what was taking place. See Roberts v. Louisville & N. R. Co., 1939, 237 Ala. 267, 186 So. 457; Hamilton v. Browning, 1952, 257 Ala. 72, 57 So.2d 530.

One of the latest and best expressions of the law as to subsequent negligence in Alabama is contained in Southern Railway Co. v. Hughes, 1958, 267 Ala. 418, 103 So.2d 324, 327.

"The rule as to subsequent negligence is not aided by a presumption that the defendant saw the danger, but the rule requires plaintiff to prove that the trainman did see and realize it in time to have done something within his power which would probably have prevented an accident. This proof may be supplied by circumstantial evidence. Atlantic Coast Line R. Co. v. French, supra [261 Ala. 306, 74 So.2d 266]; Birmingham Southern R. Co. v. Kendrick, 247 Ala. 573, 25 So.2d 419.

"If the plaintiff gave indication of inattention or of unconsciousness of his surroundings, our cases are to the effect that the trainmen should take immediate action, but not if there is nothing to indicate that he is not possessed of his senses or conscious of his danger; and if the speed of the approaching car and its distance to travel are such as to manifest a probability that it will not stop or it is in apparent existing danger in that respect, the duty of the trainmen then begins if by some warning or slackening of speed the collision might be averted. Atlantic Coast Line R. Co. v. Flowers, supra [3 So.2d 21], 241 Ala. at page 451, 3 So.2d at page 24; Johnson v. Louisville and Nashville R. Co., supra, 227 Ala. 103, 148 So. 822; 240 Ala. 219, 198 So. 350."

It was the duty of the fireman sitting on the left side of the engine

**592**

to give warning to the engineer of any dangerous situation that might arise on his side. The fireman testified that he saw the headlights of the automobile between the houses on the east side of Hurtel Street as it approached the crossing when the train was 200 to 300 feet from the crossing. He saw the automobile proceed at the same rate by the stop sign and by the cross-buck sign. The jury could reasonably have concluded from his testimony that without slackening its speed the car proceeded over the first track, over the second track, and within two feet of the track on which the train was traveling before he shouted to the engineer. The jury could reasonably believe that if the fireman had warned the engineer a little earlier, the speed of the train could have been reduced enough to permit the automobile to travel a few feet further and clear the track. The issue of subsequent negligence was therefore properly submitted to the jury.

■ As to subsequent contributory negligence, the rule is thus stated in Southern Railway Co. v. Hughes, supra;

"Plaintiff must not only have become aware of the danger, but having become aware of it and its imminence he neglected to stop or slacken his speed or divert his course so as to prevent the collision."

See also Atlantic Coast Line R. Co. v. Flowers, 1941, 241 Ala. 446, 3 So.2d 21; Heffelfinger v. Lane, 1940, 239 Ala. 659, 196 So. 720. We find no evidence that either Mrs. Byrd or Ollie Byrd, Jr., became aware of danger of the impending collision in time to have taken any preventive action. We hold therefore that there was no error in refusing to instruct the jury on subsequent contributory negligence. See Liberty Mutual Ins. Co. v. Arnold, 5 Cir., 1941, 118 F.2d 47.

Other questions presented may not arise on a second trial. The judgments are reversed and the causes remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.