LOUISVILLE & NASHVILLE RAILROAD COMPANY, Appellant,

v.

Howard WILLIAMS, Appellee.

No. 22771.

United States Court of Appeals
Fifth Circuit.

Dec. 28, 1966.

W. B. Hand, Mobile, Ala., for appellant, Hand, Arendall, Bedsole, Greaves & Johnston, Mobile, Ala., of counsel.

Benjamin H. Kilborn, Kilborn, Darby & Kilborn, Mobile, Ala., for appellee.

Before RIVES, GEWIN and GODBOLD, Circuit Judges.

RIVES, Circuit Judge:

This appeal is from a judgment in favor of the plaintiff, Howard Williams, in a suit arising out of a collision between the plaintiff's automobile and a freight train at a railroad crossing. The collision occurred on April 16, 1962, at about 4 A.M., in rural Marengo County, Alabama, near the City of Thomaston. The freight train traveling in an easterly direction collided with the plaintiff's car which he was driving in a southerly direction along Alabama Highway No. 25. As a result of the collision, the plaintiff's wife and his three-year-old daughter were killed, the automobile was damaged, and the plaintiff was slightly injured.

Two suits were filed and consolidated for trial. In the case on appeal the plaintiff sought to recover damages for the death of his daughter, for damages to his automobile, and for his own personal injuries. This suit resulted in a general verdict for the plaintiff and judgment for damages in the amount of $11,165.00. The companion suit was by the plaintiff as administrator of the estate of his deceased wife for recovery for her death. It resulted in a verdict for the plaintiff and judgment for $10,000.00, from which no appeal was taken.

The collision occurred on a cold, clear night. The windows of the automobile

were closed, except for the driver's which was open for only two or three inches. Immediately prior to the accident, the train came around a sharp curve approximately 500 feet west of the crossing. The engineer blew the whistle and rang the bell continuously for at least one quarter mile before reaching the crossing, as required by statute.[1] However, these warning signals were not heard by the plaintiff driver. The plaintiff's car was traveling at a speed of approximately 30 miles an hour and had reached a point approximately 60 to 70 feet north of the railroad track before the plaintiff simultaneously heard and saw the approaching train, applied his brakes and skidded to a stop but not until about four feet of the car had crossed over the track where it was struck by the train.

The plaintiff was unfamiliar with the railroad crossing. He had been north over the crossing one time about a year before the collision, but had never before traveled south on the highway. The railroad had erected a cross buck sign at the crossing in compliance with the Alabama statute.[2] In addition, the State Highway Department had erected a stop sign and a warning sign 223 feet north of the crossing as authorized by another Alabama statute.[3] The evidence was in conflict as to how clearly visible were these signs. The railroad tracks were imbedded in the highway and were not readily visible. There were no painted markings on the highway warning of the railroad crossing. The plaintiff testified that he did not observe any signs of the railroad crossing prior to the accident.

At the northwest corner of the intersection of the highway and the railroad track was a bank described as varying in height from 10 to 12 feet. This bank was covered with underbrush and trees. According to a survey made by the State Highway Department a few days after the accident, a driver traveling from north to south could not see westwardly up the track until at a point 100 feet north of the intersection.

Before qualifying the jury, counsel for the defendant railroad made known to the court that State Farm Mutual Liability Insurance Co. was subrogated to the interest of the plaintiff, Howard Williams, in the recovery of damages to his automobile, and requested the court to qualify the jury as to whether any were agents, employees or policyholders of that company, which request the court refused. There was no showing that counsel had any information that any member of the jury was so disqualified.[4] The court had made general inquiry of the jurors: "Do you know any facts concerning this accident? Do you know any reason why you cannot give both the plaintiff and the defendant in each case a fair and impartial trial?" And to those inquiries the jurors had replied in the negative. The *voir dire* examination of jurors rests largely in the discretion of the trial court, subject to essential demands of fairness. Spells v. United States, 5 Cir., 1959, 263 F.2d 609, 612; Kiernan v. Van Schaik, 3 Cir., 1965, 347 F.2d 775; Goosman v. A. Duie Pyle, Inc., 4 Cir., 1963, 320 F.2d 45.

In Martin v. Burgess, 5 Cir., 1936, 82 F.2d 321, 324, Judge Sibley for this Circuit suggested the following as the proper procedure with respect to jury qualification where an insurance company will be affected by the case:

"Touching the defendant's insurance and the qualification of the jurors, the court should privately ascertain whether an insurance company is to be affected by the result of the trial, and if so, without needlessly publishing the fact of insurance, should on plaintiff's [here defendant's] request exclude jurors interested in behalf of the insurer."

Allowing *voir dire* examination to determine possible interest of jurors

1. Code of Alabama 1940, Tit. 48, Sec. 170.

2. Code of Alabama 1940, Tit. 48, Sec. 172.

3. Code of Alabama 1940, Tit. 36, Sec. 6.

4. We do not mean to imply that any such showing is essential.

in the insurance company affected is a matter of balancing the interest of one party in having disinterested and unprejudiced jurors against possible prejudice to another party or parties (sometimes aligned on the other side from the party seeking the examination and sometimes aligned on the same side) by revealing the financial interest of the insurance company in the suit. Where the interest of the insurance company is as a sole (or substantial) indemnitor or claimant, the application of the rule expressed by Judge Sibley has presented no great difficulty. The problem is less simple when the interest of the insurance company is minor, in which case the relative possible prejudice to other parties may outweigh allowing the examination. Here the financial interest of the insurer by reason of its subrogation rights was relatively minor in comparison with the other claims of plaintiff for the two deaths and for personal injuries. Under these circumstances, we cannot hold that the ruling of the trial court was an abuse of discretion prejudicial to the defendant.[5]

■ From the outset the case has turned on two issues: simple negligence on the part of the railroad and contributory negligence on the part of the plaintiff driver. The plaintiff's theory of the case has been and is that the crossing was so unusually dangerous as to require the railroad to provide special warnings in addition to those required by statute.[6] While the case is a close one, we are of the opinion that, under the facts and circumstances which have been stated, it was for the jury to decide whether the crossing was so unusually hazardous that reasonable prudence would require the railroad to provide special warnings.[7]

■ Ordinarily, in Alabama it is contributory negligence as a matter of law for a motorist to fail to stop, look and listen before crossing a railroad.[8]

■ However, under all of the facts and circumstances of this case, if the jury found that the crossing was an unusually dangerous one, it was for the jury to decide also whether the plaintiff

---

5. We note also that in future cases the trial court may wish to consider the advisability of a showing as to whether or not prejudice resulted from a refusal of the court to permit such *voir dire* examination. Such a showing is suggested in the Annotation in 4 A.L.R.2nd 761 at page 798, as follows:

"Where courts have erred in refusing to permit plaintiff's counsel to examine jurors as to their connections with liability insurance companies, the error has been held not to be prejudicial in light of information obtained after rendition of the verdict to the effect that none of the jurors was so interested. Thus, in Sarelas v. Meyer (1942) 317 Ill.App. 382, 46 N.E. 2d 140 (abstract) it was held where, following the verdict, jurors were questioned by the court as to their interest in defendant's insurance company, and it was ascertained that no juror had a disqualifying interest no prejudice resulted from the court's refusal to permit plaintiff's counsel to interrogate jurors on the voir dire as to such interest."

6. Callaway v. Adams, 1949, 252 Ala. 136, 40 So.2d 73; Coe v. Louisville & Nashville R. Co., 1961, 272 Ala. 115, 130 So.2d 32; Louisville & Nashville R. Co. v. Byrd,

5 Cir. 1962, 298 F.2d 586; Grand Trunk Ry. Co. v. Ives, 1892, 144 U.S. 408, 12 S.Ct. 679, 36 L.Ed. 485; Title 48, § 173, Code of Alabama 1940.

7. See Callaway v. Adams, 1949, 252 Ala. 136, 40 So.2d 73; Sloss-Sheffield Steel & Iron Co. v. Willingham, 1940, 240 Ala. 294, 199 So. 28; Grand Trunk Ry. Co. v. Ives, 1892, 144 U.S. 408, 12 S.Ct. 679, 36 L.Ed. 485.

8. Louisville & Nashville R. Co. v. Byrd, 5 Cir., 1962, 298 F.2d 586; Southern Railway Co. v. McCamy, 1960, 270 Ala. 510, 120 So.2d 695; Atlantic Coast Line R. Co. v. Griffith, 1959, 40 Ala.App. 364, 113 So.2d 788; Southern Railway Co. v. Terry, 1958, 40 Ala.App. 186, 109 So.2d 913; Atlantic Coast Line R. Co. v. Barganier, 1952, 258 Ala. 94, 61 So. 2d 35; Louisville & N. R. Co. v. Bailey, 1943, 245 Ala. 178, 16 So.2d 167; Atlantic Coast Line R. Co. v. Flowers, 1941, 241 Ala. 446, 3 So.2d 21; Southern Ry. Co. v. Summers, 1936, 232 Ala. 417, 168 So. 179; Southern Ry. Co. v. Miller, 1933, 226 Ala. 366, 147 So. 149; Saxon v. Central of Georgia Ry. Co., 1915, 192 Ala. 434, 68 So. 313; Weatherly v. Nashville, C. & St. L. Ry. Co., 1909, 166 Ala. 575, 51 So. 959.

driver was guilty of contributory negligence.[9]

Without objection the plaintiff was permitted to prove that since the accident the highway had been marked with warnings of the railroad crossing and the bank on the northwest corner had been shaved down. Later the plaintiff offered an engineer for the State Highway Department who testified over the defendant's objection that after the accident he had caused the bank on the northwest corner to be shaved back and cleared, and approach warnings to be painted on the highway, and still later had caused automatic signal crossing lights to be installed. The district court stated its reason for admitting the evidence of those subsequent changes as not to show any admission against interest on the part of the railroad but to show whether, in fact, this was such a dangerous crossing as to require special warnings.[10]

The rule is well settled that evidence of subsequent repairs or improvements by a defendant altering the scene of an accident may not be admitted in evidence to show negligence on the part of the defendant.[11] There was ample evidence in the present case of the condition of the crossing at the time of the collision, and we do not think that the evidence of subsequent repairs and improvements was admissible under the theory employed in City of Montgomery v. Quinn, 1944, 246 Ala. 154, 19 So.2d 529, 531–533, that is, to show the condition existing at the time of the accident. We have found only one precedent as to the admissibility of evidence of subsequent conduct by a person not a party to the suit, and that is the well-reasoned opinion of the Third Circuit in Steele v. Wiedemann Machine Co., 1960, 280 F.2d 380, 382, 383. There the court said in part:

"The general rule excluding evidence of repairs made after an accident is based on two grounds:

(1) Policy purposes because

" ' * * * the admission of such acts * * * would be liable to over-emphasis by the jury, and that it would discourage all owners * * * from improving the place or thing that had caused the

---

9. Callaway v. Adams, 1949, 252 Ala. 136, 40 So.2d 73; Sloss-Sheffield Steel & Iron Co. v. Willingham, 1942, 243 Ala. 352, 10 So.2d 19; Southern Railway Co. v. Carter, 1963, 276 Ala. 218, 160 So.2d 628.

10. The district judge, in ruling on the objection, said: "I think it is admissible as to whether or not it was a dangerous crossing. I don't think it is any admission against interest of the railroad. It has to do with whether or not it was a dangerous crossing."

In its charge the court instructed the jury as follows:

"Now, you have heard testimony here that since this accident electrical signs have been put there. You have also heard testimony that since this accident some bushes have been cut down and part of this bank has been cut away. All this does not establish that this was a hazardous or an unusually dangerous crossing, but they are circumstances which you take into consideration to determine was it or not. Now, the mere fact that you see an electrical alarm system at a crossing, that alone does not prove it is a dangerous hazardous crossing, but it is a circumstance for you to consider, to determine was it or was it not. In short, you have got to determine were the signals there adequate to advise a reasonably prudent person that the railroad was there. If they were, the railroad is not guilty of negligence. If they were not, the railroad would be guilty of negligence."

11. Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188; City of Montgomery v. Quinn, 1944, 246 Ala. 154, 19 So.2d 529; Norwood Clinic, Inc. v. Spann, 1941, 240 Ala. 427, 199 So. 840; Gulf, M. & N. R. Co. v. Havard, 1928, 217 Ala. 639, 117 So. 223; Alabama Great Southern R. Co. v. Ensley Transfer & Supply Co., 1924, 211 Ala. 298, 100 So. 342; Collins v. Mobile & O. R. Co., 1923, 210 Ala. 234, 97 So. 631; Burnwell Coal Co. v. Setzer, 1914, 191 Ala. 398, 67 So. 604; Adams v. Crim, 1912, 177 Ala. 279, 58 So. 442; Menard v. Boston & Main R. Co., 150 Mass. 386, 23 N.E. 214; II Wigmore on Evidence, 3rd ed., § 283; Jones on Evidence § 288; 75 C.J.S. Railroads § 846; Annot., 170 A.L.R. pp. 7–111; 64 A.L.R.2d pp. 1296–1323.

injury, because they would fear the evidential use of such acts to their disadvantage * * *.'

"(2) Relevancy theory in that

" 'To improve the condition of the injury-causing object is therefore to indicate a belief merely that it has been *capable of causing such an injury*, but indicates nothing more * * *.' That therefore 'The supposed inference (owner's belief that his negligence caused the injury) from the act is not the plain and most probable one * * *.' Wigmore, Evidence § 283, p. 151 and § 32, ex. 2, p. 420 (3 ed. 1940). See 64 A.L.R.2d 1296, 1303 § 3(b).

"Neither reason is applicable because the owner who allegedly made the repairs is not a party to the suit. The evidence does not prejudice him nor was it introduced to prove him negligent so that the general prohibition against that kind of evidence does not operate as a bar in this instance." 280 F.2d at 382.

On the theory of relevancy mentioned by Professor Wigmore, the present case is distinguishable from that case, because there the evidence did not go to prove the defendant negligent, where here the subsequent changes did tend to the inference that the crossing was unusually hazardous and that the railroad company was negligent in not providing warnings other than those required by statute. However, Professor Wigmore makes it clear that the *controlling* ground for excluding evidence of repairs or improvements made after an accident is the argument of policy and that, if the policy purpose is obviated, the theory of relevancy may not be a sufficient ground of objection:

"To be sure, it may be argued that, on the general theory of Relevancy (ante, §§ 31, 38), it would suffice for admissibility if merely the inference was a fairly possible one,—leaving it to the opponent to argue that it was the less probable one. Theoretically, it would be perhaps difficult to deny this. But in the present instance an argument of Policy has always been invoked to strengthen the case for exclusion. That argument is that the admission of such acts, even though theoretically not plainly improper, would be liable to over-emphasis by the jury, and that it would discourage all owners, even those who had genuinely been careful, from improving the place or thing that had caused the injury, because they would fear the evidential use of such acts to their disadvantage; and thus not only would careful owners refrain from improvements, but even careless ones, who might have deserved to have the evidence adduced against them, would by refraining from improvements subject innocent persons to the risk of the recurrence of the injury.

"Whatever then might be the strength of the objection to such evidence from the point of view of Relevancy alone, the added considerations of Policy suffice to make clear the impropriety of resorting to it." II Wigmore on Evidence, 3rd ed., § 283, pp. 151, 152.

The State Highway Department which made the repairs or improvements was not a party to the suit, and the policy ground for excluding such evidence was not applicable. As has been seen, the jury was informed, both at the time of admission of such evidence and in the court's final charge, that the evidence was to be considered solely as circumstantial evidence of whether the crossing was a dangerous or hazardous crossing.

■ The district court had a broad discretion in determining whether the probative value of the evidence was outweighed by the probability that it would be overemphasized by the jury.[12] We cannot say that that discretion was abused by the able and experienced district

---

12. See I Wigmore on Evidence, 3rd ed., § 16, pp. 310–312; compare 4 Barron & Holtzoff—Federal Practice and Procedure § 2170, p. 193.

judge in holding the evidence admissible in this case.[13]

We find no reversible error in the rulings on the other questions of evidence or in the instructions to the jury complained of by the appellant railroad.

The judgment is therefore

Affirmed.

---

13. That is especially true in the light of Rule 43(a), Fed.R.Civ.P., which as this Court has noted is a rule of admissibility, not exclusion, and expands the scope of admissibility. Dallas County v. Commercial Union Assurance Co., 5 Cir., 286 F.2d 388, 394; see also Monarch Insurance Co. v. Spach, 5 Cir. 1960, 281 F.2d 401, 409 et seq.; Hambrice v. F. W. Woolworth, 5 Cir. 1961, 290 F.2d 557, 559; Hope v. Hearst Consolidated Publications, Inc., 2 Cir. 1961, 294 F.2d 681, 685, 95 A.L.R.2d 213.